OCEANIC STEAM NAVIGATION COMPANY, LIMITED, AS OWNER OF THE STEAMSHIP TITANIC, *v.* MELLOR.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 798. Argued January 13, 14, 1914.—Decided May 25, 1914.

This case falls within the general proposition that a foreign ship may resort to the courts of the United States for a limitation of liability under § 4283, Rev. Stat. *The Scotland*, 105 U. S. 24.

It is competent for Congress to enact that in certain matters belonging

to admiralty jurisdiction parties resorting to our courts shall recover only to such extent or in such way as it marks out. *Butler* v. *Boston S. S. Co.*, 130 U. S. 527.

In the case of a disaster upon the high seas, where only a single vessel of British nationality is concerned and there are claimants of many different nationalities, and where there is nothing before the court to show what, if any, is the law of the foreign country to which the vessel belongs, touching the owner's liability for such disaster, such owner can maintain a proceeding under §§ 4283, 4284 and 4285, Rev. Stat., and Rules 54 and 56 in Admiralty.

If it appears in such a case that the law of the foreign country to which the vessel belongs makes provision for the limitation of the vessel owner's liability, upon terms and conditions different from those prescribed in the statutes of this country, the owner can, nevertheless, maintain a proceeding in the courts of the United States under §§ 4283, 4284 and 4285, Rev. Stat., and Rules 54 and 56 in Admiralty.

In such a proceeding the courts of the United States will enforce the law of the United States in respect of the amount of such owner's liability, and not that of the country to which the vessel belongs.

THE facts, which involve the construction of the Limited Liability Act and the right of the petitioner in this case to the benefit thereof, are stated in the opinion.

*Mr. Charles C. Burlingham, Mr. Norman B. Beecher,* and *Mr. J. Parker Kirlin,* for Oceanic Steam Navigation Co., Ltd.:

The Limited Liability Act applies equally to American and foreign shipowners; it establishes maritime law of the United States to be universally applied in our courts as an expression of our conception of justice.

Under *The Scotland,* 105 U. S. 24, foreign shipowners are entitled to benefit of our Limited Liability Act.

The English cases giving narrow construction of early British statute were disapproved by this court in *The Scotland.*

The law of limited liability is a part of our maritime code, and is to be applied whether favorable or adverse to foreign ships.

The Harter Act decisions of this court are controlling authorities in the interpretation of the Limited Liability Act.

The application of the Harter Act to foreign ships, irrespective of nationality, is based on the broad interpretation previously given the Limited Liability Act.

The rule of limited responsibility has been uniformly applied in our courts, as shown by a history of the cases.

The application of the Limited Liability Act is not affected by the immaterial circumstance that but a single vessel is involved; and this notwithstanding the *dictum* of Mr. Justice Bradley in *The Scotland.*

Under the *La Bourgogne Case* the doctrine of the law of the flag applies only to very limited extent.

The claimants' authorities can be distinguished.

The purpose of the Limited Liability Act is not only to provide limitation, but also to enable all parties to be brought into concourse for the determination of whatever liability exists.

There is no question of limitation presented until the liability has been determined and until then the consideration of the law to be applied is premature.

In this case no other law than our own has been thus shown.

Question A should be answered in the affirmative; Question B, if answered, in the affirmative; Question C, if answered, The Law of the United States.

In support of these contentions, see *The Alaska,* 130 U. S. 201; *The Amalia,* 1 Moo. P. C. N. S. 471; Br. & Lush. 151; *The Belgenland,* 114 U. S. 355; *The Britannic,* 39 Fed. Rep. 395; *Butler* v. *Boston S. S. Co.,* 130 U. S. 527; *The Carl Johan,* cited in *The Dundee,* 1 Hagg. Adm. 109, 113; *Chartered Mercantile Bank* v. *Netherlands India Co.,* 10 Q. B. D. 521; *The Chattahoochee,* 173 U. S. 540; *Churchill* v. *The British America,* 9 Ben. 516; *The City of Norwalk,* 55 Fed. Rep. 98; *Cohens* v. *Virginia,* 6 Wheat. 264; *Cope*

v. *Doherty,* 4 Kay & J. 367; *S. C.,* 2 De G. & J. 614; *The Corsair,* 145 U. S. 335; *Cromartyshire* v. *La Bourgogne,* 44 Shipp. Gazette, 31; *S. C.,* 44 *id.* 311; *Cuba Railroad Co.* v. *Crosby,* 222 U. S. 473; *The Dundee,* 1 Hagg. Adm. 109; *Dyer* v. *National Steam Nav. Co.,* 3 Ben. 173; *S. C.,* 14 Blatchf. 483; *The Eagle Point,* 142 Fed. Rep. 453; *General Collier Co.* v. *Schurmanns,* 1 J. & H. 180; *The Girolamo,* 3 Hagg. Adm. 169; *The Great Western,* 9 Ben. 403; *The H. F. Dimock,* 52 Fed. Rep. 598; *The Hamilton,* 207 U. S. 398; *The Harrisburg,* 119 U. S. 199; *The Jason,* 225 U. S. 32; *The John Bramall,* 10 Ben. 495; *Knott* v. *Botany Mills,* 179 U. S. 69; *La Bourgogne,* 210 U. S. 95; *The Lamington,* 87 Fed. Rep. 752; *Levinson* v. *Oceanic Steam Nav. Co.,* 15 Fed. Cas. 422; *Liverpool Steam Co.* v. *Phenix Ins. Co.,* 129 U. S. 397; *The Lottawanna,* 21 Wall. 558; *Marckwald* v. *Oceanic Steam Nav. Co.,* 11 Hun, 462; *In re Morrison,* 147 U. S. 14; *The Norge,* 156 Fed. Rep. 845; *The North Star,* 106 U. S. 17; *Norwich Co.* v. *Wright,* 13 Wall. 104; *Pollock* v. *Farmers' L. & T. Co.,* 157 U. S. 429; *Prov. & N. Y. S. S. Co.* v. *Hill Mfg. Co.,* 109 U. S. 578; *Queen* v. *Keyn,* 2 Ex. D. 63; *Richardson* v. *Harmon,* 222 U. S. 96; *The San Pedro,* 223 U. S. 365; *The Scotland,* 105 U. S. 24; *The Silvia,* 171 U. S. 462; *Slater* v. *Mexican Railroad Co.,* 194 U. S. 120; *The State of Virginia,* 60 Fed. Rep. 1018; *The Strathdon,* 89 Fed. Rep. 374; *Talbot* v. *Seeman,* 1 Cranch, 1; *The Thingvalla,* 48 Fed. Rep. 764; *Thomassen* v. *Whitwell,* 9 Ben. 403; *The Wild Ranger,* 1 Lush. 553.

*Mr. Frederick M. Brown* and *Mr. George Whitefield Betts, Jr.,* with whom *Mr. Francis H. Kinnicutt, Mr. Kenneth Gardner* and *Mr. John C. Prizer* were on the brief, for Mellor and Anderson:

The law of the flag governs, and upon fundamental principle, the British law as the *lex loci delicti,* fixes the limit of petitioner's liability. The rule that liability for a tort on land is governed by the *lex loci delicti* is universal.

*Kaiser Ferdinand* v. *M——*, 57 Reichsgericht, 142; *Wilson* v. *McNamee*, 102 U. S. 572; *Huntington* v. *Attrill*, 146 U. S. 657, 670; *Herrick* v. *Minn. & St. L. Ry.*, 31 Minnesota, 11.

The only exception is where enforcement of the *lex loci delicti* would be contrary to the public policy of the State of the forum. *Nor. Pac. R. R.* v. *Babcock*, 154 U. S. 190, 198; *The Brantford City*, 29 Fed. Rep. 373, 395. And see *Powell* v. *Gt. Nor. Ry.*, 102 Minnesota, 448.

In maritime disasters upon the high seas, involving one foreign vessel or several vessels of the same foreign nationality, the law of the country to which the vessel or vessels belong, governs the rights of all parties. 1 Calvo Droit Int. (4th ed.), 552 (Bk. VI, § 3); Bluntschli, § 317; Vattel I, c. 19, § 216; Rutherford II, c. 9, §§ 8, 19; Kent I, page 26; Wheaton, 8th ed., § 106; Wharton, Internat. Law, Dig. I, § 26; Wharton, Confl. of Laws (3d ed.), § 356; *Crapo* v. *Kelly*, 16 Wall. 610, 625.

The law of the flag is the *lex loci delicti*. Minor, Confl. of Laws, § 195; Dicey, Confl. Laws, 2d ed., § 663; Wharton, Confl. Laws, § 473; *Patterson* v. *Barque Eudora*, 190 U. S. 169, 176; *The Hamilton*, 207 U. S. 398, 405; *The Scotia*, 14 Wall. 170, 184; *Crapo* v. *Kelly*, 16 Wall. 610, 624; *United States* v. *Palmer*, 3 Wh. 610, 631; *United States* v. *Klintock*, 5 Wh. 144; *Wilson* v. *McNamee*, 102 U. S. 572; *Re Ah Sing*, 13 Fed. Rep. 286; *Re Moncan*, 14 Fed. Rep. 44; *Marshall* v. *Murgatroyd*, L. R. (1870), 6 Q. B. 31.

Causes of action for death at sea, due to collision or other cause, are governed by the law of the flag. *The Hamilton*, 207 U. S. 398, 405; *La Bourgogne*, 210 U. S. 95, 138; 139 Fed. Rep. 433, 438; *The E. B. Ward*, 17 Fed. Rep. 456, 459; *McDonald* v. *Mallory*, 77 N. Y. 546; *Lindstrom* v. *Int. Nav. Co.*, 117 Fed. Rep. 170; 123 Fed. Rep. 475; *So. Pac. Co.* v. *de Valle da Costa*, 190 Fed. Rep. 689; 176 Fed. Rep. 843; *The Jane Gray*, 95 Fed. Rep. 693; *Stewart* v. *Balt. & O. R. R.*, 168 U. S. 445.

For the English rule see *Lloyd* v. *Guibert*, L. R. 1 Q. B.

115, 127 (1865). For the rule in France, see *The Dio Adelphi*, Nov., 1879, 91 Jour. du Palais, 1880, pp. 603, 609.

Where the colliding vessels are of the same nationality or where they belong to different nations whose laws, applicable to the disaster, are the same, irrespective of the nationality either of the persons on board the vessels or of the owners of property on board the vessels or of the parties litigant, the law of the flag must, on principle, govern the rights and liabilities and the limitations of the liabilities of all persons, growing out of the disaster. 5 Desjardins, Dr. Comm. Marit, 118; *The Amalia*, 1 Moore, P. C. N. S. 471, 482. For the single exception to this statement, see *Cope* v. *Doherty*, 4 Kay & Johns. 367.

For the views of the highest courts of the leading commercial nations in regard to the principles governing problems of rights and liabilities where vessels of different flags are involved, see Clunet Droit Int. Prive, 80, 154, 241, 593; *The Scotland*, 105 U. S. 24, 30; *The Apollo*, 103 Jour. du Pal. 1892, Pt. I, 69; *The Stokesley Darras*, Droit Int. Prive, 114, 125; *The Kong Inge*, 49 Reichsgericht, 182; *The Svea*, 74 Id. 46. Under the English rule positive municipal laws and regulations in this class of cases, yield to the general maritime law, even if the collision in question occur in the territorial waters of the country of the forum; *The Zollverein*, Swabey, 96; *The Saxonia*, Lush. Adm. 410; *The Nostra Signora*, 1 Dobson, 290; *The Wild Ranger*, Lush. 553; *The Leon*, 6 P. D. 148, unless the intention of the law-giving authority that the municipal law shall displace the general maritime law is clearly expressed. *The Amalia*, 1 Moore P. C., N. S., 471.

The English doctrine would afford no support to the contentions of the appellant. As the limited liability principle never was a part of the general maritime law, *The Volant*, 1 W. Rob. 383, 387; *The Alene*, 1 W. Rob. 111, 117, and has not acquired, for the United States, the

force of the general maritime law since the act of 1851 was adopted. *The Scotland; La Bourgogne, supra.*

The American view in such cases, see *The Scotland, supra,* applying the *lex fori* to cases of collision between vessels of different nations, has many adherents in continental Europe; although, as already seen, it has not found acceptance in the highest courts of France, whereas in Germany the Imperial Court has adopted it only in a modified form. See Valroger Droit Maritime, § 2124.

Diversity of citizenship of parties litigant is not a factor of legal significance. If the controversy were one of which the court might assume or decline jurisdiction in its discretion, the nationality of the parties litigant might be a material factor. *Neptune Nav. Co.* v. *Timber Co.,* 37 Fed. Rep. 159; *The Russia,* 3 Ben. 471; *Elder Dempster Co.* v. *Pouppirt,* 125 Fed. Rep. 732.

When once the court has assumed jurisdiction it should mete out justice with an even hand, regardless of race, nationality, politics or religion. If the transaction has happened beyond our territorial jurisdiction, the court should give litigants the benefit of the *lex loci* of the occurrence. *Huntington* v. *Attrill,* 146 U. S. 657, 670; *La Bourgogne,* 210 U. S. 95, 115; *Cuba R. R. Co.* v. *Crosby,* 222 U. S. 473, 478; *The Brantford City,* 29 Fed. Rep. 373, 384; *Nor. Pac. Ry.* v. *Mase,* 63 Fed. Rep. 114; *The Belgenland,* 114 U. S. 355, 370; *Thomassen* v. *Whitwell,* 12 Fed. Rep. 894.

A single-ship disaster involves the same principle as a collision between two ships of the same nation. *The Lamington,* 87 Fed. Rep. 752; *The Egyptian Monarch,* 36 Fed. Rep. 773; *The Maud Carter,* 29 Fed. Rep. 156; *Pope* v. *Nickerson,* Fed. Cas. 11,274. The American statute applies *ex proprio vigore* only to American territorial waters and to American vessels on the high seas.

The statutes of any State or nation have no extra territorial force or effect in regulating acts or occurrences be-

yond its territorial boundaries. *In rē Sawers*, 12 Ch. Div. 522, 528; *Phillips* v. *Eyre*, L. R., 6 Q. B. 1, 28; cases *supra* and *American Banana Co.* v. *United Fruit Co.*, 213 U. S. 347; *Atchison &c. Ry.* v. *Sowers*, 213 U. S. 55, 70; *The Scotia*, 14 Wall. 170, 184; *Bank* v. *Earle*, 13 Pet. 519; *The Laminton*, 87 Fed. Rep. 752; *Whitford* v. *Panama R. R. Co.*, 23 N. Y. 465; *Mahler* v. *Transp. Co.*, 35 N. Y. 352; *Thompson* v. *Ketcham*, 8 Johns. 190; *Le Forest* v. *Tolman*, 117 Massachusetts, 109; *Rundell* v. *Comp. Gen. Trans.*, 100 Fed. Rep. 655, 660; *United States* v. *Palmer*, 3 Wh. 610, 631; *United States* v. *Klintock*, 5 Wh. 144; *United States* v. *Davis*, 2 Fed. Cas. No. 14,932; 1 Kent's Comm., p. 26.

The British courts invariably held American and other foreign vessels liable without limit for negligent disasters at sea, while the former British Limitation Act was in force; although it does not appear that the British courts were ever asked to apply the American Act as the *lex loci delicti*, after that act had been duly pleaded and proved. *The Wild Ranger* (P. C.), Lush. Adm. 553; *Cope* v. *Doherty*, 2 De Gex & J. 614; *The Carl Johan*, 3 Hag. Adm. 186; *The Amalia*, 1 Moore P. C., N. S., 471, 475.

Our courts should not give British shipowners here the benefit of a more favorable rule of international law than is accorded to American shipowners in the British courts. *The Amalia, supra; The Santa Cruz*, 1 C. Rob. 50, 60, 64, 67; *The Adeline*, 9 Cranch, 244, 288.

There is no analogy between the Limited Liability Act and the Harter Act. The national policies, of which the two acts are expressions, are wholly different. The one act was designed to increase the liability of foreign ships, the other to diminish the liability of domestic ships.

The purpose of the Limited Liability Act was to change the position of, and. to confer a. benefit upon American ships and shipowners only. *La Bourgogne*, 210 U. S. 95, 120; *Richardson* v. *Harmon*, 222 U. S. 96, 103; *Moore* v. *Am. Transp. Co.*, 24 How. 1, 39; *Providence Co.*

v. *Hill Mfg. Co.*, 109 U. S. 578, 588; *The Maine*, 152 U. S. 122, 128; *Chamberlain* v. *Transp. Co.*, 44 N. Y. 305.

The debates accompanying the passage of the liability acts of 1851 and 1884, and of 1886, extending them to lake vessels, barges, etc., show that Congress intended them to apply only to American vessels.

The law of Great Britain must be taken, presumptively, as a law holding shipowners to unlimited liability.

The petition cannot be aided by any legal rule that the British law of limited liability is presumed to be similar to the American law, until shown by proper pleading and proof not to be similar. No such rule exists. *Crosby* v. *Cuba R. Co.* (C. C.), 158 Fed. Rep. 144; *S. C.*, 222 U. S. 473; *Lloyd* v. *Matthews*, 155 U. S. 222; *Crashley* v. *Press Pub. Co.*, 179 N. Y. 27; *Wooden* v. *W. N. Y. & P. R. Co.*, 126 N. Y. 10, 15; *Whitford* v. *Panama R. Co.*, 23 N. Y. 465, 468; *Carpenter* v. *Grand Trunk R. R.*, 72 Maine, 388.

The presumption of identity of the foreign law with the common law of the forum is indulged as a practical rule of convenience only where the situation is such as to create a strong probability that the two laws are in truth and fact identical or substantially so. *Dainese* v. *Hale*, 91 U. S. 13, 20, 21; *Langdon* v. *Young*, 33 Vermont, 136; *McDonald* v. *Mallory*, 77 N. Y. 546; *Lewis* v. *Woodfolk*, 2 Baxter (Tenn.), 25; *Leonard* v. *Columbia Nav. Co.*, 84 N. Y. 48; Minor, Confl. of Laws, § 214.

The presumption is that the British law on the subject of limitation of liability is that which is represented by the common law, judicially known to our courts. *Commonwealth* v. *Chapman*, 13 Metc. 68; *United States* v. *Reid*, 12 How. 361, 363; *Murray* v. *Chicago & N. W. Ry. Co.*, 62 Fed. Rep. 24, 27. Cited with approval in *Western Union Tel. Co.* v. *Call Pub. Co.*, 181 U. S. 92, 103.

The common law, as understood in this country and in England, charges petitioner with liability without limit. *The Volant*, 1 W. Rob. 383, 387; *The Scotland*, 105

U. S. 24, 28; *The Great Western,* 118 U. S. 520, 534; *The Main,* 152 U. S. 122; *The Bourgogne,* 210 U. S. 95, 116.

Therefore it must be presumed that in Great Britain, shipowners are liable without limit for disasters governed by British law, if the shipowner before the court, challenged by his adversary to establish his legal right to enjoy the benefit of any statute or law of limitation of liability, fail to plead and prove the British law.

Under the legal principle actually applicable here, the American courts must be taken as having judicial knowledge of the fact that in 1776 when this country became independent of Great Britain, the laws of the latter (statutory and non-statutory) held shipowners to unlimited liability for torts in the navigation of their ships and the courts are bound to presume, in the absence of suitable pleadings and proof to the contrary, that such is still the state of the British law. *Matter of Huss,* 126 N. Y. 537, 542; *Raynham* v. *Canton,* 3 Pick. 293; *Stokes* v. *Macken,* 62 Barb. 145; *Malpica* v. *McKown,* 1 La. (O. S.) 248, 255; *Arayo* v. *Currel,* 1 La. (O. S.) 528, 541; *Davis* v. *Curry,* 5 Kentucky, 238, 240, 241; *Berluchaux* v. *Berluchaux,* 7 La. (O. S.) 34; *Mex. Cen. Ry.* v. *Glover,* 107 Fed. Rep. 356; *Mex. Cen. Ry.* v. *Marshall,* 91 Fed. Rep. 933; *People* v. *Manhattan Co.,* 9 Wend. 351; *People* v. *Calder,* 30 Michigan, 85; *Cochran* v. *Ward,* 31 N. E. 581; *Scales* v. *Sir John Key,* 11 Ad. & Ell. 819; *Dempster* v. *Stephen,* 63 Ill. App. 126; *Newton* v. *Cocke,* 10 Arkansas, 169; *Miller* v. *Mc-Veagh,* 40 Ill. App. 532; *The Pawashick,* 2 Lowell, 142.

The only British law on this general subject existing in 1776 was the act of 1734 (7 Geo. II, c. 15), the scope of which was confined to embezzlement by the master and crew and acts *ejusdem generis. The Dundee,* 1 Hagg. Adm. 109, 121; Abbott, 14th ed., 1045; Maclachlan, 5th ed., 128.

The assertion by a shipowner of his freedom from fault does not justify the court in entertaining a limitation proceeding unless, in case of his opponent prevailing on the

issue of negligence, his averments bring him *prima facie* within the scope of some law of limited liability, properly applicable to the facts of the case.

If British law governs the Titanic disaster, the petition was properly subject to exceptions under the authorities. *Cope* v. *Doherty*, 2 De Gex & J. 614; *The Amalia* (1863), 1 Moore P. C., N. S. 471; *The Wild Ranger* (1862), Lush. Adm. 553; *Richardson* v. *Harmon*, 222 U. S. 96; *Delaware R. Ferry* v. *Amos*, 179 Fed. Rep. 756; *The Mamie*, 5 Fed. Rep. 813; 8 Fed. Rep. 367; 110 U. S. 742; *In re Eastern Dredging Co.*, 138 Fed. Rep. 942.

For authorities giving the history of the development of the law of Great Britain on the subject of the limitation of shipowners' liability, see *The Volant*, 1 W. Rob. 383, 387; *The Carl Johan*, 1 Hagg. Adm. 113; *The Dundee*, 1 Hagg. Adm. 109, 120, 121; *The Mellona*, 3 W. Rob. 16, 20; *Wilson* v. *Dickson*, 2 B. & Ald. 2; *The Amalia, supra; Chapman* v. *Nav. Co.*, 4 P. D. 157; *The Andalusian*, 3 P. D. 182, 189; *The Main*, 152 U. S. 122; Temperley & Moore (2d ed.), p. 292; Maclachlan (5th ed.), 126; Abbott (14th ed.); 637; Marsden, Collisions, chap. 7.

There have been two sorts of British acts regulating the liability of shipowners for torts happening without personal fault on their part: (*a*) those that regulate the liability of shipowners for loss or destruction of goods on board their ships, owing to fire or to robbery or to embezzlement, and (*b*) those that limit the liability of shipowners for torts generally.

In respect of fire, robbery, or embezzlement, Parliament referred to "any ship or vessel" in the acts of 7 Geo. II, c. 15 (1734), and 26 Geo. III, c. 86 (1786), and to "any sea-going ship" in the act of 17 & 18 Vict., c. 104; M. S. A., 1854, § 504, and (for greater clearness, Temperley, 2d ed., p. 293) to "any British sea-going ship" in the act of 57 & 58 Vict., c. 60; M. S. A., 1894, § 502.

In respect of limitation of shipowners' liability for torts

generally, Parliament referred to "any ship or vessel" in the act of 63 Geo. III, c. 159, § 1 (1813), and to "any sea-going ship" in the act of 17 & 18 Vict., c. 104; M. S. A., 1854, § 504, and to "any ship, whether British or foreign," in the acts of 25 & 26 Vict., c. 63; M. S. A., 1862, § 54, and 57 & 58 Vict., c. 60; M. S. A., 1894, § 503.

The acts of 61 & 62 Vict., c. 14 (1898); 63 & 64 Vict., c. 32 (1900); 6 Edw. VII, c. 48, §§ 69, 70, 71 (1906), although dealing with the same general subjects, afford no additional information concerning the will of Parliament as to the scope of the statutes regulating shipowners' liability.

For cases showing error in points advanced in appellant's brief see cases already cited and also *The Alaska*, 130 U. S. 201; *The Andalusian*, 3 P. D., 182, 189; *The Britannic*, 39 Fed. Rep. 395; *The British America*, 9 Ben. 516; *Camille* v. *Couch*, 40 Fed. Rep. 176; *The Carl Johan*, 1 Hagg. Adm. 113; 3 Hagg. Adm. 186; *Compania la Flecha* v. *Brauer*, 168 U. S. 104, 118; *Cope* v. *Doherty*, 4 Kay & J. 367, 391; *Danschewski* v. *Larsson*, 3 Revue Int. du Droit Marit, 348; *The Dundee*, 1 Hagg. Adm. 109, 120; *The Eagle Point*, 142 Fed. Rep. 453; 201 U. S. 644; *Foltz* v. *St. Louis R. Co.*, 60 Fed. Rep. 316; *Hale* v. *Allison*, 188 U. S. 56; *The John Bramall*, 10 Ben. 495, 502; *Kiefer* v. *G. Trunk Ry.*, 12 App. Div. 28, 31; *Le Forest* v. *Tolman*, 117 Massachusetts, 109; *Levinson* v. *Oceanic S. Nav. Co.*, 15 Fed. Cas. 422; *Louisville Trust Co.* v. *Knott*, 191 U. S. 225, 236; *The Main*, 152 U. S. 122, 126; *Marselis* v. *Morris, Co. Canal*, 1 N. J. Eq. 31, 35; *The Mellona*, 3 W. Rob. 16, 20; *New* v. *Oklahoma*, 195 U. S. 252, 256; *The Norge*, 156 Fed. Rep. 845, 850; *Pritchard* v. *Norton*, 106 U. S. 124, 131; *Schulenberg Lumber Co.* v. *Hayward*, 20 Fed. Rep. 422; *Shelby* v. *Guy*, 11 Wheaton, 361, 371; *The State of Virginia*, 60 Fed. Rep. 1018; *The Strathdon*, 89 Fed. Rep. 374, 380; *Venice* v. *Woodruff*, 62 N. Y. 462, 470; *United States* v. *More*, 3 Cranch, 159, 171; *United States* v. *Sanges*, 144 U. S. 310, 319; *Washington County* v. *Williams*, 111 Fed. Rep.

801, 812; *Re Wentworth Co.*, 191 Fed. Rep. 821; Westlake, Priv. Int. Law, § 201; *Wilson v. Dickson*, 2 B. & Ald. 2.

By leave of court *Mr. Howard S. Harrington, Mr. Henry J. Bigham, Mr. D. Roger Englar* and *Mr. Oscar R. Houston* filed a brief for intervening claimants as *amici curiæ*, as did also *Mr. A. Gordon Murray* and *Mr. Benjamin Micou, Mr. Richard P. Whiteley* and *Mr. George S. Graham.*

MR. JUSTICE HOLMES delivered the opinion of the court.

This case comes here upon a certificate from the Circuit Court of Appeals. The facts stated are as follows, with slight abbreviation. The Titanic, a British steamship, which had sailed from Southampton, England, on her maiden voyage for New York, collided on the high seas with an iceberg, on April 14, and sank the next morning, with the loss of many lives and total loss of vessel, cargo, personal effects, mails and everything connected with the ship except certain life boats. The owner, alleging that the loss was occasioned and incurred without its privity or knowledge, filed a petition for limitation of its liability under the laws of the United States, Rev. Stats., §§ 4283, 4284, 4285, and Admiralty Rules 54 and 56. 210 U. S. 562, 564. Before it did so a number of actions to recover for loss of life and personal injuries resulting from the disaster had been brought against the petitioners in Federal and state courts. The persons who sustained loss were of many different nationalities, including citizens of the United States. Mellor, a British subject, excepted to the petition, on the ground that 'the acts by reason of which and for which [the petitioner] claims limitation of liability took place on board a British registered vessel on the high seas' and therefore the law of the United States would not apply. Anderson, a citizen of the United States, excepted on the ground that the law of the United States

could not and that of England was not shown to apply. The District Court dismissed the petition as to these two. 209 Fed. Rep. 501. The petitioner appealed, and the Circuit Court of Appeals certified the following questions:

A. Whether in the case of a disaster upon the high seas, where (1) only a single vessel of British nationality is concerned and there are claimants of many different nationalities; and where (2) there is nothing before the court to show what, if any, is the law of the foreign country to which the vessel belongs, touching the owner's liability for such disaster,—such owner can maintain a proceeding under §§ 4283, 4284 and 4285 U. S. Revised Statutes and the 54th and 56th Rules in Admiralty?

B. Whether, if in such a case it appears that the law of the foreign country to which the vessel belongs makes provision for the limitation of the vessel owner's liability, upon terms and conditions different from those prescribed in the Statutes of this country, the owner of such foreign vessel can maintain a proceeding in the courts of the United States, under said Statutes and Rules?

In the event of the answer to question B being in the Affirmative,

C. Will the courts of the United States in such proceeding enforce the law of the United States or of the foreign country in respect to the amount of such owner's liability?

The general proposition that a foreign ship may resort to the courts of the United States for a limitation of liability under Rev. Stat., § 4283 is established. *The Scotland,* 105 U. S. 24. *La Bourgogne,* 210 U. S. 95. These were cases respectively of collisions between American and English and English and French vessels. See also *The Chattahoochee,* 173 U. S. 540. *The Germanic,* 196 U. S. 589, 598. But it is argued that there is an exception in a case like this, where only a single foreign ship is concerned. The argument is supported by a quotation from Mr. Justice Bradley in *The Scotland,* to the effect that if a collision occurred

on the high seas between two vessels belonging to the same nation the court would determine the controversy by the law of their flag. For, it is said, if the foreign law would govern in that case it must govern in this, and therefore at least in the absence of allegations bringing the case within the foreign law, the petition must be dismissed. If, in the observation referred to, Mr. Justice Bradley had been speaking of proceedings of this class it would be important as sanctioning the view that the United States courts offered a *forum concursus* for the administration of other systems as well as of our own; but we apprehend that he was speaking of an ordinary collision case and merely indicating that in such a case the principle usually governing foreign torts would apply. That principle may be accepted as equally governing here but it does not carry us far.

It is true that the act of Congress does not control or profess to control the conduct of a British ship on the high seas. See *American Banana Co.* v. *United Fruit Co.*, 213 U. S. 347, 356. It is true that the foundation for a recovery upon a British tort is an obligation created by British law. But it also is true that the laws of the forum may decline altogether to enforce that obligation on the ground that it is contrary to the domestic policy, or may decline to enforce it except within such limits as it may impose. *Cuba Railroad Co.* v. *Crosby*, 222 U. S. 473, 478, 480. Dicey, Conflict of Laws, 2d ed., 647. It is competent therefore for Congress to enact that in certain matters belonging to admiralty jurisdiction parties resorting to our courts shall recover only to such extent or in such way as it may mark out. *Butler* v. *Boston & Savannah Steamship Co.*, 130 U. S. 527. The question is not whether the owner of the Titanic by this proceeding can require all claimants to come in and can cut down rights vested under English law, as against, for instance, Englishmen living in England who do not appear. It is only whether those who do see

fit to sue in this country are limited in their recovery irrespective of the English law. That they are so limited results in our opinion from the decisions of this court. For on what ground was the limitation of liability allowed in *The Scotland* or *La Bourgogne?* Not on their being subject to the act of Congress or any law of the United States in their conduct—but if not on that ground then it must have been because our statute permits a foreign vessel to limit its liability according to the act when sued in the United States. There may be some little uncertainty in the language of Mr. Justice Bradley in the earlier case. A slight suggestion that the statute is applied because of a vacuum,—the absence of any law properly governing the transaction. But it was no necessary part of his argument that people were to be made liable after the event by the mere choice of a forum; and if they were it would not be because of the act of Congress. That does not impose but only limits the liability—a liability assumed already to exist on other grounds. The essential point was that the limitation might be applied to foreign ships if sued in this country although they were not subject to our substantive law.

It is not necessary to consider whether the act of Congress may not limit the rights of shippers or American vessels to recover for injuries in our waters or on the high seas, so that if they sued in a foreign court they could not be allowed to recover more than the act allows, if our construction of the law were followed. A law that limits a right in one case may limit a remedy in another. This statute well might be held to announce a general policy, governing both obligations that arise within the jurisdiction and suits that are brought in the courts of the United States. *Emery* v. *Burbank,* 163 Massachusetts, 326, 328. It clearly limits the remedy, as we have shown, in cases where it has nothing to say about the rights. With the explanation that we have made we may repeat here Jus-

tice Bradley's words: "The rule of limited responsibility is now our maritime rule.  It is the rule by which, through the Act of Congress, we have announced that we propose to administer justice in maritime cases."

We see no absurdity in supposing that if the owner of the Titanic were sued in different countries, each having a different rule affecting the remedy there, the local rule should be applied in each case.  It can be imagined that in consequence of such diverse proceedings the owner might not be able to comply with the local requirements for limitation, as it also is conceivable that if it sought the advantage of an alien law it might as a condition have to pay more than its liability under the law of its flag in some cases.  But the imagining of such possible difficulties is no sufficient reason for not applying the statute as it has been construed; on the whole, it would seem with good effect.

It follows from what we have said that the first two questions must be answered in the affirmative and the third, the law of the United States.

> *Answers: A, Yes.*
> *B, Yes.*
> *C, The law of the United States.*

MR. JUSTICE MCKENNA considers it a proper deduction from *The Scotland* that the law of the foreign country should be enforced in respect of the amount of the owner's liability.