**In the Matter of The Complaint of COMPANIA GIJONESA DE NAVEGACION, S.A., Owner of the M.V. Cimadevilla, for Exoneration from or Limitation of Liability.**

**No. 83 Civ. 5039 (JMC).**

United States District Court,
S.D. New York.

July 17, 1984.

Healy & Baillie, New York City (John Koster, New York City, of counsel), for plaintiff.

Freehill, Hogan & Mahar, New York City (James L. Ross & Patrick Bonner, New York City, of counsel), for claimant.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Wah Yuen Shipping, Inc.'s ["Wah Yuen"] motion to increase the security fund is granted. Fed.R.Civ.P., Supp.R. F(7) for Admiralty & Maritime Claims ["Rule F(7)"].

## BACKGROUND

On July 6, 1983, Compania Gijonesa De Navegacion, S.A. ["Gijonesa"] commenced this action claiming exoneration from liability from a vessel collision and seeking the application of liability limitations pursuant to the Limitation of the Liability of Owners of Sea-Going Ships (1957) ["Brussels Convention"] and 46 U.S.C. § 183. This action arises out of a collision in Spain on January 11, 1983 of its Spanish vessel, the M/V Cimadevilla ["Cimadevilla"] with the M/V Crusader, a Panamanian vessel owned by the claimant Wah Yuen. As a result of the collision, Wah Yuen presented its damages claim of $607,644.10 to Gijonesa and thereafter, Gijonesa instituted this action and asserted that its interest in the Cimadevilla was $98,110.77.[1] It then deposited that amount as security with the court for the benefit of claimants, permitting them to challenge that amount.

As a claimant Wah Yuen objected to the amount of security and challenges the law employed by Gijonesa in calculating the limitation fund. Wah Yuen asserts that the security should be increased to total $1,784,800, representing Gijonesa's $1,715,000 interest in the Cimadevilla at the end of the voyage plus $34,800, the value of the freight.[2] In addition, Wah Yuen timely filed a claim in this Court for $607,644.10.

Wah Yuen argues that the Brussels Convention is a matter of procedural rather than substantive law and that a Spanish court would not apply the official rate of exchange of gold for conversion of pesatas into poincare francs. Wah Yuen's expert on Spanish law opines that a Spanish court would apply Article 837 of Spain's Commercial Code which provides that the limitation fund equals the value of the vessel plus the value of pending freight.[3] This is also the valuation specified in Rule F(7) and 46 U.S.C. § 183(a). With respect to the instant dispute, Wah Yuen argues that the Court, as the forum court, should apply the federal liability limitation.

---

1. See Complaint, 83 Civ. 5039 (JMC) at ¶¶ 7, 11 (S.D.N.Y. July 6, 1983).

2. Compania Gijonesa De Navegacion, S.A. ["Gijonesa"] informed Wah Yuen Shipping, Inc. ["Wah Yuen"] that the value of the vessel plus pending freight is $1,784,800.00. See Notice of Motion to Increase Security Fund Pursuant to Supplemental Rule F(7), Exh. 8 (filed Dec. 20, 1983).

3. See id., Exh. 7a.

Gijonesa alleges that generally 46 U.S.C. § 183 and the Federal Rules of Civil Procedure limit liability *unless* the foreign substantive law which limits the right provides a different and lower limitation, as Spanish law does in the instant action. Thus, Gijonesa argues that the Brussels Convention is substantive and applies to the limitation of liability issue because it attaches to a right and limits it. Gijonesa argues that Spanish law mandates the limitation value used herein because of its domestic enactment of the Brussels Convention.[4]

With respect to the valuation of the poincare franc, Gijonesa argues that Spanish courts would use the official rate for the value of gold in converting poincare francs, based on the opinion of its expert. The official rate of gold was the only rate at the time of the formulation of the Brussels Convention.

## DISCUSSION

■ Generally, "in the absence of some overriding domestic policy translated into law, the right to recover for a tort depends upon and is measured by the law of the place where the tort occurred." *Black Diamond S.S. Corporation v. Robert Stewart & Sons (Norway Victory)*, 336 U.S. 386, 396, 69 S.Ct. 622, 627, 93 L.Ed. 754 (1949) [*"Black Diamond"*] (citations omitted). Because the collision occurred in the territorial waters of Spain, the rights and

4. The Limitation of the Liability of Owners of Sea-Going Ships (1957) [hereinafter "Brussels Convention"] provides in relevant part:

Article 3

1. The amounts to which the owner of a ship may limit his liability under Article 1 shall be:

(a) where the occurrence has only given rise to property claim an aggregate amount of 1,000 francs for each ton of the ship's tonnage;

\*　　\*　　\*　　\*　　\*　　\*

6. The franc mentioned in this Article shall be deemed to refer to a unit consisting of sixty five and a half milligrams of gold of millesimal fineness nine hundred. The amounts mentioned in § 1 of this Article shall be converted into the national currency of the State in which limitation is sought on the basis of the value of that currency by reference to the unit defined above at the date on

liabilities of the parties are governed by Spanish substantive law.

■ With respect to procedural rules, it is well-settled that the law of the forum controls. *See Bournias v. Atlantic Maritime Co.*, 220 F.2d 152, 154 (2d Cir.1955). Gijonesa, when it deposited the $98,110.77 with the court, claimed that Spanish law provides that this is the monetary limit pursuant to the Brussels Convention. Gijonesa contends that the Brussels Convention is a substantive rather than procedural part of the laws of Spain. Wah Yuen contends that while the substantive rights involved are governed by Spanish law, it claims that the calculation of the liability limitation is a matter of procedure governed by the forum's laws.

■ Wah Yuen further argues, in the alternative, that if Spanish substantive laws were to apply, its Commercial Code would control rather than the Brussels Convention. The Spanish Commercial Code provides that the limitation of liability is the value of the vessel plus pending freight. This valuation is identical to that of the laws of the United States. Calculating liability is further complicated by the fact that the "official" rate has been eliminated in Spain and no other rate has been adopted.

Wah Yuen also argues that even if the Brussels Convention applied, Article 4 directs:

which the shipowner shall have constituted the limitation fund, made the payment or given a guarantee which under the law of that State is equivalent to such payment.

6 *Benedict on Admiralty* at 5–12, 5–13 (7th Ed. 1981). Furthermore, Spain's "Reservations and Declarations" with respect to the Brussels Convention are as follows:

The Spanish Government reserves the right:

(1) to exclude from the application of the Convention the duties and obligations set forth in Article 1, Para. 1(c);

(2) to regulate by specific provisions of its national law the limitation of liability applying to owners of vessels of under 300 tons' capacity;

(3) to give effect to the present Convention either by making it self-executing or by including its provisions in national legislation in a form appropriate thereto.

*Id.* at 5–27.

Without prejudice to the provisions of Article 3, § 2, of this Convention, the rules relating to the constitution and distribution of the limitation fund, if any, and the rules of procedure shall be governed by the national law of the State in which the fund is constituted.[5]

Thus, Wah Yuen argues that even the Brussels Convention's laws mandate that limiting the fund is a matter of procedural law governed by United States law.[6]

The Supreme Court determined that the procedural rules of the forum would control the amount of the security to be posted in limitation proceedings. *Oceanic Steam Navigation Co. v. Mellor (Titanic)*, 233 U.S. 718, 34 S.Ct. 754, 58 L.Ed. 1171 (1914) [*"The Titanic"*]. Thereafter, the Supreme Court although not overruling *The Titanic*, determined that if the substantive rights of the parties are controlled by foreign law and if the foreign limitation "attaches" to such rights, then the foreign limitation governs rather than the forum state's limitation laws.[7] *See Black Diamond, supra*, 336 U.S. at 395–96, 69 S.Ct. at 627; *see also Matter of Bowoon Sangsa Co.*, 720 F.2d 595, 599 & n. 5 (9th Cir.1983). In *Black Diamond, supra*, the Supreme Court further stated in dicta that if foreign law merely provides "procedural machinery" to already existing claims, the forum's procedural laws would apply. 336 U.S. at 396, 69 S.Ct. at 627. Thus, pursuant to the Supreme Court's directive, the Court must determine whether Spain's limitation of liability is a matter of substantive or procedural law. *See Matter of Bethlehem Steel*

**5.** Article 3, section 2 of the Brussels Convention provides:

In each portion of the limitation fund the distribution among the claimants shall be made in proportion to the amounts of their established claims.

**6.** This argument does not resolve the instant dispute because it assumes that the issue of the limitation of liability is a matter of procedural law.

**7.** This Circuit has indicated that *Oceanic Steam Navigation Co. v. Mellor (Titanic)*, 233 U.S. 718, 34 S.Ct. 754, 58 L.Ed. 1171 (1914) [hereinafter *"The Titanic"*] remains good law. *See Kloeck-*

*Corp.*, 435 F.Supp. 944, 947 (N.D.Ohio 1976), *aff'd* 631 F.2d 441 (3d Cir.1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981).

The parties have submitted affidavits of Spanish lawyers, knowledgeable in Spanish law, which indicate disagreement on the issue of whether the Brussels Convention is a matter of substantive or procedural law. Wah Yuen's witness, Manuel Gonzalez Rodriguez, contends that the Brussels Convention is considered procedural in Spain. He further states that a Spanish Court would apply its Commercial Code to the instant dispute. He contends that the right to recover monetary damages caused by a collision was created statutorily by Article 826 of the Commercial Code of 1885. The Brussels Convention was not enacted until much later. Thus, he concludes that the limitation of liability provision of the Brussels Convention merely modifies a pre-existing right and, therefore, is procedural.[8] Recognizing that the official rate of gold was eliminated as the basis of the international monetary system by the International Monetary Fund ["IMF"] in 1975, *see Trans World Airlines v. Franklin Mint Corp.*, —— U.S. ——, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984), which Gijonesa's witness Jose Maria Alcantara concedes, Mr. Rodriguez contends that the official conversion rate is not used in Spain.

Mr. Alcantara contends that the Brussels Convention is a matter of substantive law in Spain, claiming that it "qualifies the right of limitation itself in a substantive

*ner Reederei und Kohlenhandel v. A/S Hakedal (The Western Farmer)*, 210 F.2d 754, 756 (2d Cir.1954) (Hand, J.) [hereinafter *"The Western Farmer"*]; *see also Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *Matter of Bowoon Sangso Co.*, 720 F.2d 595, 599 & n. 5 (9th Cir.1983); G. Gilmore & C. Black, *The Law of Admiralty*, 942–43 (2d ed. 1975).

**8.** Acknowledging that the United States is not a contracting party to the Brussels Convention, the Court disagrees with Wah Yuen's argument that the Brussels Convention is inapplicable in a non-contracting state because of Article 7. *See* Affidavit Regarding Affidavit of Sr. Jose Maria Alcantara at 2–3 (filed Feb. 1, 1984).

manner."[9] He further opines that the Commercial Code was substantively amended by the Brussels Convention and that a Spanish Court would apply the Brussels Convention and the official conversion rate when calculating the limitation fund.

Initially, the Court notes that there is no Spanish or Second Circuit case that is dispositive on the issues involved in this action. Following the analysis of *Black Diamond,* it appears that the foreign limitation of liability is procedural.[10] *First,* the limitation of liability provision of the Brussels Convention does not attach to the right of recovery resulting from a collision because it is a pre-existing right by virtue of the Spanish Commercial Code. *See Matter of Bethlehem Steel Corp., supra,* 435 F.Supp. at 948. The right to recovery existed as early as 1810 and continues to exist pursuant to the Commercial Code. The subsequent enactment of the Brussels Convention in Spain, does not alter this fact. *Second,* limitation of liability which determines the amount to be posted for claimants, defines the remedy, and is a matter of procedure. *See Kloeckner, Reederei und Kohlenhandel v. A/S Hakedal, (The Western Farmer)* 210 F.2d 754, 756 (2d Cir. 1954), *appeal dismissed,* 348 U.S. 801, 75 S.Ct. 17, 99 L.Ed. 633 (1955). The limitation of liability simply measures damages and does not attach to a pre-existing right. It merely provides a limited fund for all claimants. *See Black Diamond, supra,* 336 U.S. at 395–96, 69 S.Ct. at 627.

Because the limitation of liability provision at issue is procedural, the Court applies the laws of the forum—United States law. Mindful that such a determination could result in forum shopping, the facts and circumstances of this action support a finding that the Brussels Convention, if applicable, is procedural in nature. United States law directs that Gijonesa deposit security that equals the value of the vessel plus pending freight. *See* Rule F(7); 46 U.S.C. § 183. The Court notes that this valuation is similarly defined by section 837 of the Commercial Code.

Furthermore, the Court notes that the parties agree that the official rate of gold has been eliminated by the IMF and Spain. Thus, even assuming *arguendo* that the substantive law of Spain is to be applied, it is disputed what calculation would govern. There is lack of proof in this area. Furthermore, the formula of the Brussels Convention has not been applied in Spain. The Commercial Code uses the same valuation as the federal rules. While Gijonesa seeks to employ the official rate of gold and values a poincare franc in Spain at 4.6434 pesetas, the Court declines to do so for the reasons asserted above. Because the rate of conversion employed in Spain has not been adequately established, the Court would have to assume that Spanish law is the same as United States law and would apply the same valuation for calculating the limitation of liability.

In conclusion, Gijonesa is directed to increase the security posted with the Court so that it equals $1,784,800.00.

## CONCLUSION

Wah Yuen's motion to increase the security fund from $98,110.77 to $1,784,800.00 is granted. Fed.R.Civ.P., Supp.R. F(7).

---

**9.** *See id.* at 243. While it is undisputed that Spain has enacted the Brussels Convention as law, no Spanish Court has applied the formula set forth therein. *Id.;* Reply Affidavit of James L. Ross, ¶¶ 4–5 (filed Mar. 1, 1984).

**10.** The court in *Complaint of Ta Chi Navigation (Panama) Corp. S.A.,* 416 F.Supp. 371, 378 (S.D. N.Y.1976) suggested that *The Titanic* is more relevant to collisions on the high seas resulting in loss of lives while *Black Diamond S.S. Corporation v. Robert Stewart & Sons (Norway Victory),* 336 U.S. 386, 396, 69 S.Ct. 622, 627, 93 L.Ed. 754 (1949) [hereinafter *"Black Diamond"*] applies to collisions in territorial waters resulting in loss or damage to property. However, in *The Western Farmer, supra,* 210 F.2d at 756, Judge Hand determined that *The Titanic* governed that action which involved the loss of cargo and required the court to apply the forum's limitation of liability.

The Court also disagrees with the analysis that when the foreign limitation of liability is lower than that of the forum, it is therefore substantive. *See Complaint of Ta Chi Navigation (Panama) Corp., S.A., supra,* 416 F.Supp. at 379–80. Neither *The Titanic* nor *Black Diamond* mandate this conclusion.

Gijonesa is directed to post, within fourteen (14) days of this Memorandum and Order, additional security with the Court so that the total sum will equal $1,784,800.00.

The parties have sixty (60) days from the date of this Memorandum and Order to complete discovery.

SO ORDERED.