THOMAS SCATTERGOOD. The (PHILLIPS v.). See Case No. 11,106.

---

## Case No. 13,928.

### THOMASSEN et al. v. WHITWELL.

[9 Ben. 113;[1] 23 Int. Rev. Rec. 146.]

District Court, E. D. New York.    April 7, 1877.

ADMIRALTY — JURISDICTION IN ACTIONS BETWEEN FOREIGNERS—LACHES.

1. Jurisdiction of the defendant having been duly acquired, admiralty courts have power to entertain suits in personam and to determine the matter in controversy where the parties are foreigners of different nationalities.

2. When courts of admiralty with general admiralty powers have been constituted without any prohibition by the government against entertaining suits between foreigners, it is doubtful whether it is within the discretion of the judge of such a court to decline to hear a cause of collision arising on the high seas between vessels of different nationalities

3. Delay in requesting the court to decline jurisdiction on the ground that the parties to the suit are foreigners, when during the period of the delay the position of the parties has changed in any material degree, and especially by action taken in court without objection, may afford a

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

special reason, if any is needed, for declining the application.

[Cited in Slocum v. Western Assur. Co., 42 Fed. 236.]

4. Where the respondent is represented by an agent in this state and has property within the territorial jurisdiction of the court which has been seized under process with an attachment clause, after which the respondent has entered a general appearance and has obtained the release of his property by giving a stipulation to abide the event, and has proceeded to take depositions de bene esse on his own behalf and has filed his answer to the libel, joining issue upon merits, and where testimony has been also taken by the libellants, the court will not refuse to entertain the action, nor will it grant an application to forbid the further prosecution of the action on the ground that libellants and respondent are aliens, neither domiciled nor temporarily present in the United States at or since the commencement of the action.

[See The Bee. Case No. 1,219.]

In admiralty.

C. Van Santvoord and James K. Hill, for libellants.

R. D. Benedict and Foster & Thomson, for respondents.

BENEDICT, District Judge. This is an action in personam brought by Jens Thomassen and Julius Smith, owners of the bark Daphne, against Mark Whitwell and others, composing the firm of Mark Whitwell & Co., owners of the steamship Great Western, to recover for the injuries sustained by the bark Daphne in a collision with the steamship Great Western that occurred on the 24th of March, 1876, on the high seas.

Upon the filing of the libel process was issued with an attachment clause, by virtue of which property of the defendant Mark Whitwell was seized within this district, whereupon the defendant entered a general appearance in the cause and obtained the release of his property by giving a stipulation to abide the event. Thereafter the testimony of three witnesses was taken de bene esse on the part of the respondent, and the depositions filed in court. Afterwards the testimony of seven witnesses was taken de bene esse on the part of the libellants and their depositions also filed in court on the 10th day of April, 1876. In November the defendant Whitwell filed his answer to the libel, wherein he joins issue upon the merits.

The respondent now makes known to the court that the libellants and the respondent are aliens who have never been domiciled in the United States, nor were they or either of them temporarily present in the United States at the commencement of the action or since, whereupon the respondent objects to the entertaining of this action by this court, and prays that the court would forbid the further prosecution thereof by reason of the facts made known as aforesaid.

In support of this application the ground has been taken that as matter of law the court is without jurisdiction to entertain an action in personam where the parties are aliens, neither domiciled nor temporarily present in the United States.

This position has not been strongly insisted on and cannot be maintained. The district courts of the United States have original jurisdiction of all civil cases of admiralty and maritime jurisdiction, and this jurisdiction depends upon the subject matter. Whenever the matter is maritime in its nature any district court may entertain jurisdiction, provided it acquires jurisdiction of the parties in the manner prescribed by law. Here the matter is conceded to be maritime in its nature, and jurisdiction over the person of the defendant has been duly acquired. There is therefore no room to question the power of the court to determine the matter in controversy. The most that can be claimed is that the court has power to decline to proceed in the cause upon being informed that the controversy is one between aliens. A doubt has been suggested whether a court of admiralty can in a case where jurisdiction of the person has been acquired rightfully decline to entertain jurisdiction of a cause of collision on the high seas (The Mali Ivo, 3 Mar. Law Cas. p. 245), and if such doubt would arise in any case it arises in a case like this where the parties are foreigners of different nationalities, and therefore cannot be remitted to any forum that will not be foreign to one of them.

In countries where the civil law forms the basis of their jurisprudence, and, in accordance with the maxim of the civil law, actor sequitur forum rei, personal actions must be brought before the tribunals of the place where the defendant has a domicile. Actions for collision have been made an exception, and may be brought where neither of the parties reside. The ground of the exception is the legal fiction that in case of a collision a quasi contract arises on the part of the wrong-doer to pay the damage he has caused, and as it cannot be supposed to be intended that such a contract is to be performed upon the sea, the place of its performance must be taken to be the port at which the injured vessel first arrives. Wherefore the tribunals of the port at which the vessel first arrives take cognizance of the action as being to recover a demand there payable. This is the ground taken in local tribunals. But courts of admiralty are in a fair sense international courts. As originally constituted in Europe, they are the appropriate tribunals to take cognizance of suits where the parties are foreigners. And if resort to such a fiction as above stated be allowable anywhere to support jurisdiction, it may be allowed in courts of admiralty. If allowed, the jurisdiction follows, as of course. The Jerusalem [Case No. 7,293].

The power of every government to prohibit its tribunals to be engaged in determining the rights of aliens of course exists, but when courts of admiralty with general admiralty powers have been constituted with-

out any such prohibition, it is much to say that it is within the discretion of the judge of such a court to decline to near a cause of collision arising on the high seas between vessels of different nationalities, and where consequently there is no home forum to which the parties can be remitted. "Where the question is one of jus gentium to be determined by sound discretion .acting upon general principles, the court will hold plea of it." 2 Brown, Civil & Adm. Law, p. 119.

The remark in the opinion of the supreme court of the United States in the case of The Maggie Hammond, 9 Wall. [76 U. S.] 457, that "the question is one of discretion in every case," &c., is broad enough to cover cases of collision, but does not cover a case like this; and besides in that case the question was not raised by the pleadings. nor involved in the controversy there made. Reference has been made to numerous cases of foreign seamen—cases peculiarly maritime in character, where courts of admiralty have declined to entertain the action. But cases of this character bear a peculiar relation to commerce, and under some circumstances may cripple a maritime adventure. This relation has often given rise to the insertion in treaties of special provisions in regard to such actions. Such cases stand upon a somewhat different ground, therefore, from cases of collision, and I know not that I could agree with all that has been said with regard to entertaining jurisdiction even in wages cases.

Again, it is said that the law applicable in cases of foreigners is to be found in the implication arising from the remark of Story, that "suits are maintainable here between foreigners where either of them is within the territory of the state in which the suit is brought" (Conflict of Laws, § 542). In this case the defendant is here by his agents authorized to defend his interest, by his property which has been attached, and by his stipulation given upon which judgment is to be entered, if at all.

But assuming that the court may decline jurisdiction in such a case as this, it cannot be denied that a strong case must be shown to justify the exercise of that power. The present case is far from strong. It is true that the defendant is a foreigner without domicile here, but he is owner in a line of steamers that run regularly from New York, which line has a permanent office in the city of New York. His defence can be made here as well as anywhere, and his rights will here be adjudged according to the same rules administered by the courts of his own country. As between him and the libellants he is laid under no disadvantage, therefore, by being compelled here to answer this demand.

Moreover the request to decline jurisdiction has been delayed until the testimony has been taken and filed, and the libellants' evidence made known. It is said that as the matter rests with the court, and the ground on which jurisdiction will be declined arises out of the duty of the court to give its time to citizens rather than to aliens, delay in making the application is of no moment. But when during the period of delay the position of the parties has changed in any material degree, and especially by action taken in court without objection, delay may afford a reason for declining the application. The fact that this is a cause of collision where the parties have gone to the expense of taking the testimony of some thirteen witnesses, whose depositions have been received on the files of the court, appears to me to give the libellants just ground to require of this court to complete the proceeding that has been allowed to go on so far. Justice requires that the libellants be not compelled to take this testimony over again, and not put to the hazard of losing the evidence as it stands of record in the cause, and not compelled to lose the benefit of the security which the respondent has given in this cause without the suggestion of an intention to ask the court to decline to enforce it.

Furthermore it must be noticed, that this action is brought not only at the port where the disabled vessel first arrived after the accident, but where the damage to her was repaired, and the affidavits make it evident that the only real controversy between the parties is as to the amount of damage caused by the collision. The questions which the court will be called on to decide relate therefore to acts done and payments made in this port, and this is therefore the natural and proper place for an investigation of these questions.

It is for the interest of our nation that its ports be resorted to by foreigners for the purposes of repairing their ships. To say to foreigners so resorting to our ports that proof of the work there done cannot be made in our courts, as against aliens liable to pay for the same, would tend to deter parties from using our ports as a place of resort. As a matter of public policy, therefore, our courts should not decline to entertain such an action as the present. For these reasons the application is denied and the action must proceed.

[NOTE. Subsequently the owners of the Great Western sought by abandonment of the ship and freight to avoid personal liability, but the court held that since, at the time the offer to abandon was made, the title to the vessel had passed out of the respondents, they had nothing to abandon. Full damages in favor of the libellants were decreed. Case No. 13,929. They then made application for leave to file amended answer, which was denied. Id., 13,930. On appeal to the circuit court, it was held that the Great Western was liable for the proceeds of the wreck, amounting to $1,796.14, and gave a decree for that amount and interest, and for the costs of the libellants in this court. 12 Fed. 891. Appeal was then taken to the supreme court, where the decree of the circuit court was affirmed. 118 U. S. 520, 6 Sup. Ct. 1172.]