## THE MANDU.

### Petition of COMPANHIA DE NAVEGACAO LLOYD BRASILEIRO.
#### No. 197.

Circuit Court of Appeals, Second Circuit.
March 6, 1939.

460

Forrest E. Single, of New York City (Roscoe H. Hupper, Douglas D. Crystal, and Wilbur H. Hecht, all of New York City, of counsel), for appellants.

Purrington & McConnell, of New York City (T. Catesby Jones, Frank J. McConnell, James D. Brown, and Leonard J. Matteson, all of New York City, of counsel), for appellee.

Before AUGUSTUS N. HAND and CHASE, Circuit Judges, and PATTERSON, District Judge.

PATTERSON, District Judge.

There was a collision between the Brazilian steamer Mandu and the German steamer Denderah in Brazilian waters at the port of Santos on July 31, 1929. The Denderah went down, and most of its cargo was lost. In June, 1930, Great American Insurance Company brought libel in rem against the Mandu in the District Court. The libel set forth that the Mandu was wholly at fault; that the Great American had insured cargo on the Denderah, had paid the loss incident to the collision, and had become subrogated to the shipper's rights; further, that certain other insurers had paid the losses suffered by other owners of cargo, had become subrogated to the owners' rights, and had for value assigned their claims to the Great American. An amendment was filed in October, 1930, specifying two shippers whose losses had been paid by the Great American and giving particulars on the insurers, cargo owners, items of cargo and losses in respect to which the Great American alleged ownership of claims by assignment. Damages of $225,000 were claimed. The owner of the Mandu filed bond and the ship was released. In October, 1930, a second libel was brought by the Great American against the Mandu, setting forth that insurers had insured other owners of cargo on the Denderah, had paid the losses and had assigned their claims to the Great American for value. Names of insurers and cargo owners, items of cargo and losses were given. After the filing of the second suit the owner of the Mandu brought the present proceeding for limitation of liability.

The petition, filed December 10, 1930, was in the usual form, alleging that the collision was due wholly to the fault of the Denderah and demanding exoneration or in any event limitation of liability. Bond for $281,000, the value of the Mandu, was posted, the bond in the first suit discharged and proceedings in both suits stayed. The Great American filed claim for $364,000 and answered the petition, averring ownership of a large number of claims substantially as in the libels. No other claimant appeared. Numerous depositions were taken concerning the conduct of the two vessels at the time of the collision. The petitioner by amended petition added allegations that the collision occurred in territorial waters of Brazil, that the Mandu was a Brazilian vessel and the Denderah a German vessel, that both Brazil and Germany were parties to the Brussels Convention of 1910, that the Brussels Convention provided that if both vessels in a collision were at fault, the liability of each should

be in proportion to the degree of fault committed and that damages to vessels and likewise to cargoes should be borne by the vessels at fault in such proportions. Under this head the petitioner pleaded that the fault of the Denderah was very great and the fault of the Mandu, if any, very slight, and that damages against the Mandu should in any event be proportioned according to its degree of fault. The Great American's exceptions to these allegations concerning the Brussels Convention were overruled (D.C., 15 F.Supp. 627).

The case having come on for trial in May, 1937, the Great American undertook to prove title to two claims, since its standing as a claimant in any degree had been challenged by the petitioner. The proof showed that Siemens Schuckert Werke, a German concern, shipped merchandise on the Denderah, that the merchandise was lost as a result of the collision, that the Siemens concern was insured against loss by a group of insurance companies, that the group paid the loss in the amount of $6,450, that the Great American had 2½ percent interest in the insurance, that it paid to the Siemens concern $164.69 as its share of the loss, that the Siemens concern assigned its claim against the Mandu to Assekuranz Union, a German insurance company, and that the latter in turn assigned the Siemens claim to the Great American. The assignment to the Great American was in the conventional form in use in this country, reciting payment of $1 and other valuable consideration, and was dated July 22, 1930. There was also proof that the Borsig company, another German concern, shipped two locomotives on the Denderah, that the shipment was insured by the Wurttemberg Insurance Company of Germany, that the locomotives were lost and that the Wurttemberg company paid $80,000 as loss. The Wurttemberg assigned its claim to the Great American by cable of June 27, 1930, and followed it up by a formal assignment under date of July 2, 1930. The Great American conceded that it had not paid value for either of these two assignments, the arrangement being that any proceeds collected were to be accounted for to the foreign insurance companies. Proof tendered by the parties on the facts of the collision was also taken.

On motion by the petitioner the District Court dismissed the claim of the Great American (20 F.Supp. 820). It held that claims must be filed by the real party in interest, that the proof showed that the Great American was not the real party in interest and did not own the claims, no value having been paid for the assignments. But the court refused at that time to permit the petitioner to withdraw the petition. On the contrary, it extended the time for filing claims to October 1, 1937, so that those whom it deemed the real parties in interest might file claims. Some ninety claims were then filed for an aggregate $384,000, the claimants being in the main German insurance companies which had purported to assign their claims to the Great American. These claims the court later dismissed on the ground of laches (21 F.Supp. 372). There being then no claimant in the case, the court entered final decree permitting the petitioner to withdraw the petition and dismissing the case.

The Great American and the later claimants assign as error the dismissal of their claims and the granting of leave to the petitioner to withdraw the petition. They also assign as error the order overruling exceptions to the pleading of the rule of liability in collisions laid down by the Brussels Convention.

■■■ 1. The Great American proved ownership of the two claims on which evidence was offered, and the court below erred in throwing it out as an intruder. It may be that the mere fact that an underwriter has paid its proportionate share of a loss as one of a group of underwriters insuring an owner of cargo does not give it standing to file a libel against a vessel said to have caused the loss or to file claim in a limitation proceeding commenced later. Fairgrieve v. Marine Insurance Company, 8 Cir., 94 F. 686. But the Great American proved that owners of cargo lost on the Denderah had assigned to it their claims against the Mandu by instruments of assignment absolute in terms. It cannot be doubted that as between the assignors and the Great American the latter had legal title to the claims. Payment to the Great American or recovery by it would be a bar to subsequent suit by the assignors. In non-maritime causes a person who takes legal title to a claim by outright assignment is deemed the real party in interest and is entitled to maintain suit in his own name, and it makes no difference that he is merely collecting for the account of the assignor. Sheridan v. Mayor, 68 N.Y. 30; Anderson v. Reardon,

46 Minn. 185, 48 N.W. 777; King v. Miller, 53 Or. 53, 97 P. 542; Chase v. Dodge, 111 Wis. 70, 86 N.W. 548. The practice in admiralty is the same, The Rupert City, D.C., 213 F. 263, and so far as we know the title of one who holds an outright assignment from the original owner of a demand or claim has not been questioned until the present case. The court below seems to have put its decision on the fact that the assignments were made for purposes of collection. That fact is of no significance so far as concerns the title of the assignee to the claims.

■ 2. The petitioner attempts to support the result below as an exercise of the power of the court to decline jurisdiction in a case where the interests concerned are foreign. It is by no means clear that the judge dismissed the proceeding on that ground. He would appear from the record to have permitted withdrawal of the petition because of his ruling that there were no claimants before the court. Be that as it may, a refusal to retain jurisdiction because of foreign interests would have been an abuse of discretion at the stage which the case had reached. While the court had undoubted jurisdiction of the limitation proceeding and of the prior suits from which it arose, retention of jurisdiction of a suit in admiralty between foreigners is within the discretion of the court of first instance, the exercise of such discretion being final except in case of abuse. The Belgenland, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152; Charter Shipping Co. v. Bowring, 281 U.S. 515, 50 S.Ct. 400, 75 L.Ed. 1008; Canada Malting Co. v. Paterson Steamships Co., 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837. The citizenship of the Great American did not deprive the court of power to decline jurisdiction, in view of the fact that the Great American was not the original owner of any claim but was only subrogate and assignee of foreign shippers and insurers. United States Merchants' & Shippers' Insurance Co. v. A/S Den Norske Afrika Og Australie Line, 2 Cir., 65 F.2d 392. So for jurisdictional purposes the case may be treated as one where the adversaries were German shippers on the one side and a Brazilian ship owner on the other. On such a basis the foreigners interested were of different nationalities; they had no common home to which they might be sent to try their case; no agreement had been made that litigation be carried on in a particular country. Under these conditions it would have been unusual to have declined jurisdiction even at an early stage. The Belgenland, supra, pages 363, 368–369, 5 S.Ct. 860; Thomassen v. Whitwell, Fed.Cas. No. 13,928, 9 Ben. 113. But later other factors came into the situation. By the time the suit was dismissed, so many years had elapsed that neither the shippers who lost cargo on the Denderah nor the Great American which succeeded to their claims could have brought suit anywhere else. The collision occurred eight years earlier. A rejection of the case in 1937 on discretionary jurisdiction meant that the Mandu got off scot-free, whatever the right or wrong of the collision. Both sides had gone to great expense. The petitioner had put up security. The suit had actually been tried on the merits, though not decided. A discretionary relinquishment of jurisdiction at that time because of foreign interests was unquestionably beyond the bounds of the discretion reposed in the court of first instance. See Thomassen v. Whitwell, supra.

■ The petitioner says that it would have pressed the court to decline jurisdiction when the original libels were filed, if it had not been misled by "false and misleading" allegations in the libels concerning the Great American's acquisition of claims. There is little substance in this. The petitioner must have known all along that the title of the Great American to claims against the Mandu, whether by subrogation or assignment, came from foreign interests. It knew that the cargo on board the Denderah was of European origin and bound for South America. It could not have read the lists of shippers and insurance companies given in the libels as the assignors of the libellant without realizing that nearly all of them were German. The allegations in the libels did not mislead it in any important particular.

■ 3. The dismissal of the assignors' claims filed in October, 1937, may stand. The District Court permitted filing of those claims only because it had determined, erroneously in our opinion, that the Great American had no title and no standing. The claims filed later were in the main the same claims as those comprised in the claim put in by the Great American. To the extent that they may have been new claims, the court below was right in recalling permission to file and in

deciding that the claimants were barred by laches.

4. The Great American also assigns as error the overruling of its exceptions to the petitioner's pleading of the Brussels Convention of 1910. Article 4 of the Convention provides:

"If two or more vessels are in fault, the liability of each vessel is in proportion to the degree of the faults respectively committed. Provided that if, having regard to the circumstances, it is not possible to establish the degree of the respective faults, or if it appears that the faults are equal, the liability is apportioned equally.

"The damages caused, either to the vessels or to their cargoes or to the effects or other property of the crews, passengers, or other persons on board, are borne by the vessels in fault in the above proportions, and even to third parties a vessel is not liable for more than such proportion of such damages."

■ Both Germany and Brazil are parties to the Convention. The United States has not adopted it, and under our maritime law it is still the rule that where both vessels are at fault in a collision, innocent cargo may recover full damages against either. The Atlas, 93 U.S. 302, 23 L.Ed. 863.

■ Liability for tort caused by collision in the territorial waters of a foreign country is governed by the laws of that country. Smith v. Condry, 1 How. 28, 11 L.Ed. 35; Restatement of Conflict of Laws, section 409. That law not only determines the existence of the liability but also generally determines the measure of it. Northern Pacific R. Co. v. Babcock, 154 U.S. 190, 14 S.Ct. 978, 38 L.Ed. 958; Slater v. Mexican National R. Co., 194 U.S. 120, 126, 24 S.Ct. 581, 48 L.Ed. 900. "The injustice of imposing a greater liability than that created by the law governing the conduct of the parties at the time of the act or omission complained of is obvious." Western Union Telegraph Co. v. Brown, 234 U.S. 542, 547, 34 S.Ct. 955, 956, 58 L.Ed. 1457. But on limitation of liability in maritime cases the statutes permitting limitation are regarded as relating to remedy, and the law of the forum controls. The Titanic, 233 U.S. 718, 34 S.Ct. 754, 58 L.Ed. 1171; Restatement of Conflict of Laws, section 411; see, also, Western Union Telegraph Co. v. Brown, supra, page 547, 34 S.Ct. 955. The Brussels Convention recognizes this and leaves it to each nation to enforce its own law of limitation of shipowners' liability. From these settled rules, the liability of the Mandu is determined by Brazilian law; the extent of the liability will in no event exceed what is proper under the Brussels Convention, the rules embodied in that Convention being part of the law of Brazil and the particular article here involved, Article 4, clearly relating to right rather than remedy, see The Eagle Point, 3 Cir., 142 F. 453, certiorari denied 201 U.S. 644, 26 S.Ct. 760, 50 L.Ed. 902, and the Mandu's right further to limit liability, if any, will be decided according to our own statutes on the right of a shipowner to limit his liability. It may be noted that the Great American has no fair grievance against the rules of the Brussels Convention. After all, its rights are only those of cargo owners who were content to ship their goods on a German vessel, and Germany as well as Brazil abides by the Convention. Even if the collision had occurred on the high seas, the law common to both vessels, the Convention, would control their liabilities to one another and to cargo. The Belgenland, supra. The petitioner therefore had the right to interpose the Brussels Convention when beset by claims of cargo on the Denderah, and the court below did not err in overruling the claimant's exceptions.

■ It will not do to say that the articles of the Convention are against our public policy. While our own law lays down different rules, "we are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home." Loucks v. Standard Oil Co., 224 N.Y. 99, 111, 120 N.E. 198, 201.

The decree will be reversed and the case sent back for decision on the merits between the petitioner and the Great American.