**ANGLO-AMERICAN GRAIN CO., Ltd.,**
Libellant,

v.

**THE S/T MINA D'AMICO, her engines, tackle, boilers, etc., Respondent.**

No. 7881.

United States District Court
E. D. Virginia,
Norfolk Division.

Jan. 21, 1959.

Michael B. Wagenheim, Norfolk, Va.,
William Garth Symmers, New York City,
for libellant.

Jett, Sykes & Coupland, Henry E.
Howell, Jr., Norfolk, Va., for respond-
ent.

**WALTER E. HOFFMAN,** District Judge.

Under bills of lading dated August 24, 1955, libellant, an English corporation, shipped on board the S.S. Dongola, a vessel of British ownership and registry, at Bombay, India, a cargo of groundnut oil cake expeller valued at $50,000 for carriage to Hamburg, Germany, and Antwerp, Belgium. While off the coast of Spain on September 20, 1955, the S.S. Dongola came into collision with the respondent vessel, S/T Mina D'Amico, of Italian ownership and registry. Libellant's goods were damaged along with other cargo on board. Both vessels were damaged but the hull claims are not before any American court.

■ This action in admiralty was originally instituted in the United States District Court for the Southern District of New York on September 12, 1957. By an appropriate order entered on October 28, 1957, the cause was transferred to this district. On November 4, 1957, service was accepted by proctors for the claimant-master "with the same force and effect as if said vessel was physically attached". Such acceptance of service is merely the equivalent of attaching the vessel and is frequently used to avoid the necessity of the marshal's services. It does not, of course, authorize the vessel's sailing without giving bond. On the same day bond in the sum of $62,000 for the release of the vessel was fixed by the Court and duly posted.

The immediate question for consideration is the motion of the respondent to decline jurisdiction. Admittedly no American interests are involved. The owner of the Italian vessel has agreed, as a condition to declination of jurisdiction, to post security equivalent to the security already posted in this Court in any court of competent jurisdiction in England or France as may be determined by libellant. Respondent has further agreed to accept service of process in England or France, and will waive any defense of the statute of limitations or laches. Thus we have a situation in which the respondent has agreed to submit to the jurisdiction of libellant's home forum.

■ Libellant opposes this motion for the obvious reason that if the British vessel, Dongola, contributed to the collision with the Italian vessel, Mina D'Amico, libellant would only be entitled to one-half of its damages in an action instituted in a European court. The United States is the sole remaining major country possessing a large merchant fleet which has refused to adhere to that portion of the Collision Convention of 1910 which makes cargo accept the same proportion of fault as its carrier ship in a both-to-blame collision. Under the American doctrine cargo may recover its full loss from the "other" ship (assuming that said other ship contributed to the collision), and the "other" ship is then permitted to add the cargo recovery to its loss to be divided with the carrier vessel. The variance between the law of the United States and the laws of other major shipping nations leads to efforts on the part of shipowners to avoid being sued in the United States, and like efforts on the part of cargo to institute actions in the United States. Cognizant of the benefits to be derived from the application of the American doctrine, the libellant seeks "justice" in this Court.

There is little to be said from the standpoint of inconvenience, expense or delay. Whatever benefits appear from these factors would clearly suggest that a trial in England is preferable under normal circumstances. It is true that a trial date could be secured in this Court at any mutually convenient time following the completion of testimony, but the arrangements for this evidence to be taken in foreign countries is at best cumbersome. It would be especially difficult to secure the testimony of the crew members of the British vessel, Dongola, should either party desire to avail itself of this opportunity. Such difficulties promote delays, inconvenience, and attendant expense. While it is true that the Italian vessel, Mina D'Amico, has had occasion to visit the Port of Hampton Roads and other ports throughout the

United States, no benefit will inure to either party on a trial in this country as the collision occurred more than three years past and the crew of the Mina D'Amico has been transferred to other vessels.

The owners of the two vessels have agreed to arbitration in Paris. The cargo interests, other than libellant, have agreed with the owners of the Mina D'Amico to refer the question of damages and compensation to a single arbitrator to be selected by the parties or, in the absence of agreement, to be appointed by the Committee of Lloyd's. The present libellant should not be deprived of its day in court and cannot be required to submit to arbitration in the absence of any express agreement. However, the fact that proceedings will be conducted in France and England pointedly suggest the convenience of the European forum.

It is freely recognized that controversies which are *communis juris* should be determined in our courts where the offending vessel has been attached here, unless the Court, in its discretion, is of the opinion that respondent has shown special circumstances for declining to exercise jurisdiction because "justice" may be better served elsewhere. The Belgenland, 114 U.S. 355, 365, 5 S. Ct. 860, 29 L.Ed. 152; The Attualita, 4 Cir., 238 F. 909; Motor Distributors, Limited v. Olaf Pedersen's Rederi A/S, 5 Cir., 239 F.2d 463, certiorari denied 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 760, rehearing denied 353 U.S. 989, 77 S.Ct. 1282, 1 L.Ed.2d 1147; The Mandu, 2 Cir., 102 F.2d 459; Kloeckner Reederei und Kohlenhamdel v. A/S. Hakedal (The Western Farmer), 2 Cir., 210 F.2d 754, appeal dismissed 348 U.S. 801, 75 S.Ct. 17, 99 L.Ed. 633; The Kaiser Wilhelm Der Grosse, D.C.S.D.N.Y., 175 F. 215. Once the respondent has met the burden of showing that the interests of justice tend to require the action to be heard elsewhere, the district court may then exercise its discretion to retain jurisdiction, or to decline same. The meaning of "discretion" is defined in Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520, as follows:

"The term 'discretion' denotes the absence of a hard and fast rule. The Styria v. Morgan, 186 U.S. 1, 9, 22 S.Ct. 731, 46 L.Ed. 1027. When invoked as a guide to judicial action, it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result."

Undeniably, the discretion of the district judge must be grounded upon correct legal principles as it is otherwise subject to reversal. When applied on proper legal principles, the discretion is of great weight. The Belgenland, supra; The Maggie Hammond, 9 Wall. 435, 76 U.S. 435, 19 L.Ed. 772; Canada Malting Co. v. Paterson Steamships, 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837, in which Justice Brandeis refers to the "unqualified discretion" of a district judge to decline jurisdiction in cases between foreigners.

In Canada Malting it is noted that libellant's motive for invoking the jurisdiction of a United States court was identical with the motive of the libellant herein, namely, to permit innocent cargo to recover full damages from the noncarrying vessel under the decisions in The Atlas, 93 U.S. 302, 23 L.Ed. 863, and The New York, 175 U.S. 187, 209, 210, 20 S.Ct. 67, 44 L.Ed. 126. Despite the difference in Canadian and United States laws relating to the rights of cargo, the United States Supreme Court affirmed the action of the district court in declining to exercise jurisdiction. In all material respects Canada Malting is essentially the same as the case at bar when we view the conditions imposed by the court as to an appearance in the Canadian action and the requirement to post security. Indeed, Justice Brandeis commented [285 U.S. 413, 52 S.Ct. 416]:

"It is difficult to conceive of a state of facts more clearly justify-

ing the refusal of a district court to retain jurisdiction in a cause between foreigners."

"Obviously, the proposition that a court having jurisdiction must exercise it, is not universally true; else the admiralty court could never decline jurisdiction on the ground that the litigation is between foreigners."

While Canada Malting was an *in personam* action, a foreign attachment was levied and security posted. True, the collision was between two Canadian vessels on the United States side of Lake Superior and the cargo had been shipped on a Canadian bill of lading, whereas we are here faced with a collision between British and Italian vessels on the high seas off the coast of Spain with cargo having been shipped on British bills of lading.

Respondent's offer to accept service of process in England or France, as libellant may elect, together with its agreement to waive the defense of limitation of actions or laches, and its willingness to post security in the European forum equivalent to the amount fixed by this court, has effectively established a forum common to all parties—a forum which is the libellant's home forum and concerning which libellant should not be heard to complain that "justice" is not complete merely because the laws of England (or France), although clearly in line with the majority of other nations, do not afford such an advantageous opportunity for recovery as the laws of this country.

■ Understandably there are, of course, circumstances which justify the retention and exercise of jurisdiction in actions between foreigners. Closely allied to the factors of inconvenience, delay and expense, are situations in which one or both of the foreign countries are in a state of war. Watts, Watts & Co., Ltd. v. Unione Austriaca Di Navigazione, 248 U.S. 9, 39 S.Ct. 1, 63 L.Ed. 100. Jurisdiction unquestionably exists in an action between foreigners wher-

ever the *res* is attached, but discretion to exercise or decline remains with the trial court if there is an adherence to the correct principles of law applicable to the situation presented.

■ The recent case of Motor Distributors, Limited v. Olaf Pedersen's Rederi A/S, supra [239 F.2d 465] is admittedly somewhat analogous to the facts herein submitted. Various foreign cargo interests were involved, but the Fifth Circuit, in reversing the district judge, did not discuss the benefits accruing to cargo by reason of the institution of this action in the United States. Assuming arguendo that the point was argued, the Court of Appeals concluded that the trial court was in error in holding that "jurisdiction in causes between foreign parties arising from losses occasioned by the collision of two foreign vessels on the high seas [will be entertained] only in those cases in which an injustice would be visited on either of the parties if the Court declined jurisdiction." The correct rule was stated to be: "They have jurisdiction in such cases, and that they will exercise it unless special circumstances exist to show that justice would be better subserved by declining it." In other words, had the trial court in Motor Distributors applied the test as pronounced by the Court of Appeals, which tends to shift the burden to the party requesting declination of jurisdiction, the discretion may have been properly exercised. However, the dictum in Motor Distributors carries with it a clear implication that jurisdiction can never be declined or deferred as to ocean-going carriers where the vessel is proceeded against *in rem*. If this is a correct statement of the law, the discretionary jurisdiction of the trial court is completely abolished in proceedings *in rem*. The Belgenland, 114 U.S. 355, at page 368, 5 S.Ct. 860, 29 L.Ed. 152, approaches an *absolute* rule of law, but since that date the Supreme Court has had many occasions to review this question and no such conclusion may be drawn from its views expressed. Although the opinion in Motor Distributors does not

stress the point that, prior to the hearing on the motion to dismiss the libel, a number of depositions had been taken, logs and other data had been produced, and surveyors had examined the ship's steering mechanism and plans, it is not unlikely that these factors played an important part in the ultimate question as to whether justice would be better subserved in declining jurisdiction. Courts are naturally reluctant to require the parties to begin anew in another forum after an appreciable amount of testimony and investigation has been completed—a situation which does not confront the parties in this case so far as the American forum is concerned.

In The Mandu, 2 Cir., 102 F.2d 459, the trial court's action in dismissing certain claims filed in a limitation of liability proceeding was reversed; the court noting that, after going to great expense and posting security, eight years had elapsed since the date of the collision and to require the claimants to go elsewhere would be tantamount to barring forever the rights of the cargo interests. However, the court acknowledged the discretion of the court of first instance as *final* except in case of abuse by referring to The Belgenland, supra; Charter Shipping Co. v. Bowring, Jones & Tidy, Limited, 281 U.S. 515, 50 S.Ct. 400, 74 L.Ed. 1008; and Canada Malting Co. v. Paterson Steamships, supra. Obviously in The Mandu no offer to post security, accept service of process, or waive the statute of limitations, was ever made as a condition to granting petitioner's motion to dismiss.

We turn to Kloeckner Reederei Und Kohlenhandel v. A/S Hakedal (The Western Farmer), 2 Cir., 210 F.2d 754, decided in 1954, an opinion by Judge Learned Hand. This case goes further than any other authority on the subject of exercising jurisdiction in an action between foreigners where a collision occurs on the high seas. Again, however, the ultimate question is whether the respondent in admiralty, seeking to remove to another jurisdiction, would be unfairly prejudiced. The court treats as irrelevant the matter of the rights of

cargo under American law as contrasted with its rights under the Brussels Convention of 1910—apparently this is not a factor to consider in determining the propriety of declining jurisdiction. Cf. Canada Malting Co. v. Paterson Steamships, supra. As was said in The Mandu [102 F.2d 463]:

"It will not do to say that the articles of the Convention are against our public policy. While our own law lays down different rules, 'we are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home.' Loucks v. Standard Oil Co., 224 N.Y. 99, 111, 120 N.E. 198, 201."

For the foregoing reasons, this Court rejects the theory of libellant that "justice" can only be obtained in an American forum.

The Second Circuit has not been uniform in its decisions on the subject matter at issue. In United States Merchants' & Shippers' Ins. Co. v. A/S Den Norske Afrika Og Australie Line, 2 Cir., 65 F.2d 392, again an opinion by Judge Learned Hand, the validity of the reasoning in Canada Malting and Charter Shipping Co. v. Bowring, Jones & Tidy, Limited, supra, is freely and expressly recognized in a cargo claim against the owners of the carrying vessel. To the same effect is the treatment of a seaman's claim for injuries on the high seas where the Swedish law is controlling, see Koziol v. The Fylgia, 2 Cir., 230 F.2d 651, certiorari denied 352 U.S. 827, 77 S.Ct. 40, 1 L.Ed.2d 49, and Berendson v. Rederiaktiebolaget Volo, 2 Cir., 257 F.2d 136, certiorari denied 358 U.S. 895, 79 S.Ct. 156.

The doctrine in this Circuit, while perhaps not clear as to a cargo claim, is well stated as to seamen's rights in Heredia v. Davies, 4 Cir., 12 F.2d 500, and The Fletero v. Arias, 4 Cir., 206 F.2d 267. In O. & Y. Nuri v. The Johanna, 4 Cir., 210 F.2d 261, a suit in admiralty was instituted by the owners of a Turkish vessel which sank as the result of a collision with a German vessel in the North Sea. The trial court declined to accept jurisdiction, largely on the basis of non-avail-

ability of witnesses to establish the cause of the collision. Although not mentioned in the brief *per curiam* opinion of the appellate court, respondent agreed to post security in the foreign forum. Between the time of the hearings in the trial and appellate courts, libellant produced evidence as to the availability of witnesses and the case was remanded to the lower court with instructions to again consider the matter in the light of the new evidence.

The contention is finally advanced by libellant that answers to interrogatories propounded to respondent would establish that the respondent vessel was at least partially at fault, and that a decree could then be entered for full damages under the doctrine pronounced in The Atlas, supra, and The New York, supra. These extensive interrogatories would require respondent to answer as to movements, changes in movement, sound signals, lights, and many other details involving *both* vessels. The interrogatories essentially require a complete disclosure of the facts surrounding the collision; much of which is within the knowledge of the officers and crew members of the British vessel, Dongola, not parties to this action. Certainly the interests of justice require the action to be heard in the English forum where all parties will be amenable to the process of the court.

When we consider the fact that (1) no American interests are involved, (2) the respondent has agreed to accept service of process in England or France as libellant may elect, (3) the respondent will post security in the foreign forum so selected in an amount equivalent to that already posted in this court, (4) the respondent will waive any defense of the statute of limitations or laches, (5) the respondent has agreed to submit to the jurisdiction of libellant's *home* forum, (6) there are no witnesses in America but all, or practically all, witnesses would be available in England to testify, if necessary, in open court, (7) the inconvenience, delay, and expense is far greater to the parties if a trial in America proceeds,

as contrasted with an action in the English court, (8) no testimony has been taken by either party, (9) proceedings by way of arbitration are agreed upon in England and France, which will make the evidence more readily available in either of these countries, we arrive at the conclusion that justice manifestly would be better subserved by declining jurisdiction. Indeed, it may amount to a failure of justice to exercise jurisdiction under the facts herein stated. If Canada Malting has any further meaning, it would certainly appear to be applicable in this case after respondent complies with the conditions imposed.

An order will be entered staying further proceedings herein until such time as the action has been maintained in the foreign forum selected by libellant and all conditions fulfilled as agreed upon by respondent. Upon receipt of advices from proctors for libellant that there has been strict compliance with the terms imposed, as referred to in this memorandum, an order will then be entered declining jurisdiction and dismissing the action.

Proctors for respondent will present an appropriate order for entry.