**TRANSOMNIA G.m.b.H., Plaintiff,**

**v.**

**M/S TORYU, her engines, boilers, etc., Dai-Ichi Kisen Kaisha, Dai-Ichi Kisen Co. Ltd., First Line Company, Ltd., and First Line Company, S.A., Defendants.**

**No. 68 Civ. 5154.**

United States District Court,
S. D. New York.

Feb. 24, 1970.

Donovan, Donovan, Maloof & Walsh, New York City, for plaintiff; James M. Kenny, New York City, of counsel.

Healy & Baillie, New York City, for defendants; Allan A. Baillie, New York City, of counsel.

## OPINION

COOPER, District Judge.

Defendants move, pursuant to Rule 12(b) F.R.Civ.P., for an order dismissing plaintiff's complaint for *forum non conveniens*. This suit arises out of the foundering of the S.S. Toryu on March 9, 1968 while on a voyage from San Fernando, Philippines, to Changhang, South Korea. Plaintiff has attached funds, allegedly belonging to First Line Co. Ltd.[1], and *"in personam* process has been effectively served on Dai-Ichi Kisen Co., Ltd. and First Line Co. Ltd." (Plaintiff's Memorandum of Law in Opposition, January 29, 1970, p. 2).

The burden of a party seeking to have the district court decline jurisdiction on the grounds of *forum non conveniens* is a heavy one. Ataka & Co. Ltd. v. S.S. San Patrick, 1965 A.M.C. 2516 (S.D.N.Y.). As the Supreme Court stated in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947):

> The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." at 508, 67 S.Ct. at 843.

Among the criteria elucidated by the Court in *Gilbert* as bearing on the question of dismissal, are the ease of access to sources of proof, the availability of compulsory process, and the cost of obtaining willing witnesses. Fitzgerald v. Westland Marine Corp., 369 F.2d 499, 501 (2d Cir. 1966). Beyond this general statement, precise guidelines are lacking, and the decision entrusted to the discretion of the district court. Nestle's Products Ltd. v. Osaka Shosen Kaisha, 175 F.Supp. 876 (S.D.N.Y.1959).

Upon weighing the relevant considerations, we find the balance strongly in favor of declining jurisdiction.

At first blush, this action appears to involve international litigation without the existence of any convenient local forum. Plaintiff, a Swiss corporation, sued four defendants, viz. 2 Japanese corporations, (Dai-Ichi Kisen Kaisha ("Dai-Ichi"), Dai-Ichi Kisen Co. Ltd. ("Dai-Ichi Ltd."), 1 South Korean corporation (First Line Co. Ltd. ("First Line"), and a Panamanian corporation (First Line Co., S.A. "First Line S.A.") ).

The Toryu, of Panamanian registry, was owned by First Line. Dai-Ichi Ltd. acted as managing agent arranging charters and booking cargo. Plaintiff attached funds "connected" with First Line S.A. However, these four defendants are not unrelated independent corporations, but are in fact closely linked operations. Dai-Ichi and Dai-Ichi Ltd. are one and the same. Eul Young Kim ("Kim"), the President of this Japanese "conglomerate" is President of First Line as well and one of the organizers of First Line S.A. The Bill of Lading governing the Toryu's cargo shipment is printed on stationery bearing the names of both Dai-Ichi Ltd. and First Line. In fact, Dai-Ichi Ltd's cable address in Osaka is "First Line." First Line is no longer actively engaged in business, and First Line S.A. is yet to become a legal entity; incorporation under Panamanian law has not been completed. Thus defendants are the boat's managing agent Dai-Ichi Ltd., the Japanese corporation, and its closely linked, and now defunct, South Korean corporation, First Line.

The fateful voyage of the Toryu, with its precious cargo of ore concentrates, originated in the Philippines and was to

---

1. It appears that the identity of the owner of these funds is uncertain. Defendant initially stated that they belonged to First Line Co. S.A., a Panamanian corporation. However, defendant now insists that incorporation procedures have never been completed, and the funds owners are a group of individuals who are organizers of First Line Co. S.A.

sail to South Korea. The shippers were two Philippine mining concerns and the notifying party was a South Korean corporation. Thus both the business transaction and the voyages encompassed by the Toryu were strictly limited to the Far East. Plaintiff derives its interest as consignee of the cargo.

The Bill of Lading included the following provision:

"Unless otherwise expressly provided, this Bill of Lading shall be constructed [sic] by Japanese law, and the rights of the parties thereunder shall be determined accordingly."

■ Plaintiff is correct in stating that the fact that Japanese law may be applied does not require our refusal to hear this case. Nonetheless it is a highly relevant factor to be considered when determining convenience.

■ Further, this action involves the determination of defendants' liability for the loss of the cargo. Potential witnesses on the basic issues of due care in the loading and the carrying of the cargo on the high seas would be the Philippine loaders and the boat's crew. While it may well be of equal difficulty to transport any Philippine witness to trial in Japan or South Korea as to the United States, such is not the case in respect of the entire crew of the Toryu—all are South Koreans. The defense also asserts that the testimony of the boat's master is of prime importance to its defense; he is no longer in defendant's employ, and as a South Korean National is restricted in his travels.

In sum, there is not a single contact between the United States and this litigation arising out of the Toryu's incompleted voyage.

■ In asking this court to retain jurisdiction, plaintiff's weightiest argument is that the "case is well along to trial. Discovery of documents has been effected; the testimony of the defendants has been taken by their President; defendants have noticed the examination of plaintiff; facts have been admitted, and documents established as genuine pursuant to Rule 36 of the F.R.C.P." (Plaintiff's Affidavit in Opposition, January 28, 1970, pp. 2–3). We note that defendant's original counsel was the representative of the garnishee bank. Present counsel was substituted on July 15, 1969, after this Court had ordered Kim to appear for examination before trial, the most significant pre-trial event that has occurred. As late as October 3, 1969 (this motion first appeared on the motion calendar December 23, 1969), defendant's counsel, in objecting to placing the case upon the trial calendar stated:

"Nothing about the venture—the parties, ship, contract of carriage—had anything to do with the United States. As a result, investigating the incident is difficult and is taking a long time" (Defendant's Notice Pursuant to Calendar Rule 5(b), Oct. 3, 1969.)

Ataka & Co. Ltd. v. S.S. San Patrick, *supra*, the case relied upon by plaintiff, is of dubious support. In *Ataka*, pretrial discovery (and rulings by the court relating to discovery) was only one of six substantial contacts with our forum. There defendant's agents were doing business in New York, the charter party was entered here, companion litigation was instituted with common issues and evidentiary proof, and the Canadian law which governed aspects of the case was substantially identical to ours.[2]

2. The plaintiff also cites, in support of this argument Anglo-American Grain Co. v. The S/T Mina D'Amico, 169 F.Supp. 908 (E.D.Va.1959) where the court stated:

Although the opinion in Motor Distributors [Motor Distributors v. Olaf Pedersen's Rederi A/S, 239 F.2d 463 (5th Cir. 1956) rehearing denied Jan. 8, 1957] does not stress the point that,

prior to the hearing on the motion to dismiss the libel, a number of depositions had been taken, logs and other data had been produced, and surveyors had examined the ship's steering mechanism and plans, it is not unlikely that these factors played an important part in the ultimate question as to whether justice would be better subserved in declining jurisdiction. Courts are nat-

Plaintiff also insists that defendant's "true" motivation for seeking this relief is "to avoid the valid attachment of First Line Ltd's funds." Defendant's offer to condition its requested dismissal of the action upon its posting a bond equivalent to the amount attached provides plaintiff with sufficient security[3] to protect this attachment.

Were it not for defendant's tardiness in making this motion, a fault which permitted a fair amount of pretrial discovery to take place, this case would be a paradigm for outright dismissal. In light of defendants' delay, its motion to dismiss is granted on the three conditions proferred as set forth in their moving papers.

Settle order on notice.

Clifford Sweet, of the Legal Aid Society of Alameda County, Oakland, Cal., and Joseph Simmons, of Simmons & Noel, Oakland, Cal., for plaintiffs.

Mark B. Shragge, Deputy City Atty., Edward A. Goggin, Oakland, Cal., for defendant.

urally reluctant to require the parties to begin anew in another forum after an appreciable amount of testimony and investigation has been completed—a situation which does not confront the parties in this case * * *." 169 F.Supp. at 912–913.

However, in *Motor Distributors*, the pre-trial discovery had been far more extensive than has occurred here. There "testimony of the captain and of other officers and crew members was taken by deposition aboard the vessel; logs and other data material to the cause of the collision were produced and identified and appellants' surveyors examined the

Sunny Prince's steering mechanism and plans." 239 F.2d at 464.

In reversing the district court's declination of jurisdiction, the court did not rely on these pre-motion activities but found the standard applied by the lower court improper. Further, in *Motor Distributors*, the forum had custody of the res—the Sunny Prince was arrested in Florida.

Lastly, we fully agree with *Anglo-American* that the amount of pre-trial discovery is an important consideration when weighing convenience.

3. Plaintiff seeks damages totaling $1,-500,000. The attachment is for $53,000.