**PAPER OPERATIONS CONSULTANTS INTERNATIONAL, LTD., a corporation, Plaintiff-Appellant,**

v.

**SS HONG KONG AMBER, her engines, boilers, tackle and apparel, et al., Defendants-Appellees.**

No. 73–1261.

United States Court of Appeals, Ninth Circuit.

March 24, 1975.

---

George L. Waddell (argued), of Dorr, Cooper & Hays, San Francisco, Cal., for plaintiff-appellant.

John A. Flynn (argued), of Graham & James, San Francisco, Cal., for defendants-appellees.

Before ELY and WALLACE, Circuit Judges, and JAMESON,* District Judge.

## OPINION

JAMESON, District Judge:

Plaintiff-appellant, Paper Operations Consultants International, Ltd., appeals from an order granting the motion of defendant-appellee, Universal Marine Corporation,[1] to dismiss an admiralty ac-

---

* Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

1. Universal Marine is the owner of the defendant SS Hong Kong Amber. The defendants Orient Maritime Agencies and United Transo-

tion on the ground of *forum non conveniens.*

The plaintiff is a Bahamian corporation with its principal office in Palm Beach, Florida. Defendant Universal Marine Corporation is a foreign corporation organized under the laws of Liberia. It is the owner of the SS Hong Kong Amber, a foreign vessel flying a Liberian flag and of Liberian registry.[2] The SS Hong Kong Amber operates as a common carrier of merchandise between ports on the west coast of North America and the Far East.

The plaintiff, through defendant's general agent in New York, Thor Eckert and Co., Inc., arranged to ship certain papermaking machinery and accessories on the SS Hong Kong Amber from Vancouver, British Columbia, to the Port of Singapore. Plaintiff delivered the cargo to defendant in Vancouver. Vancouver Weighmark Co., Ltd., a Canadian corporation with offices in Vancouver, acted as the plaintiff's freight forwarder. Western Overseas Shipping, Ltd., another Canadian corporation doing business in Vancouver, served as agent for the SS Hong Kong Amber in Vancouver at the time of the shipment. The bill of lading covering the shipment was issued by Orient Maritime Agencies, the face of the bill showing an address in Los Angeles and 311 California Street, San Francisco. The cargo was delivered in Singapore seriously damaged, and portions of the cargo were missing entirely.

Plaintiff submitted a claim for the damage to defendant's general agent in New York. The agent requested that plaintiff "forward all documents to Orient Maritime Agencies, 311 California Street, San Francisco, to the attention of Court Lindsay for direct handling". Negotiations were commenced with the San Francisco office of Orient Maritime Agencies as directed. When the negotiations failed, plaintiff filed suit in San Francisco.

In granting the defendant's motion to dismiss on the grounds of *forum non conveniens,* the district court held that under the circumstances the litigation of the matter in San Francisco as opposed to Vancouver would not result in the kind of hardship to the defendant "necessary to dismiss this action". Concluding however, that Vancouver was a more appropriate forum for the action, the court stated:

" . . . Vancouver has a more substantial connection with the action, and trial there would be more appropriate. Vancouver was the place where the cargo was loaded and it is the place where any witnesses except the one from Florida would be located. While the claims office in San Francisco will have documentation with respect to pre-trial negotiation matters, the other documents seem to be located in Canada.

"Since this dispute is entirely between foreign nationals about a transaction which except for the initial booking was entirely outside the United States, and most of the documents and the witnesses are in Vancouver, all of which is probably subject to Canadian law, Vancouver is the more appropriate forum. While the defendants' agent did tell the plaintiff to process the claim in San Francisco, the Court does not think that this is enough to make the tax-payer in the United States pay the cost of litigation. It would seem that Vancouver is a more appropriate forum and that *San Francisco has the least contact of any place with the transaction.*" (Emphasis added).

The court granted defendant's motion "on the condition that defendant consent

---

ceanic Shipping Corporation are agents of Universal Marine. Defendant Orient Overseas Line "is a trade name for certain vessels, including the SS Hong Kong Amber, operated by the Chinese Maritime Trust Co., Ltd. of Taipei, Taiwan". Universal Marine will be referred to hereinafter as the defendant or appellee.

2. In its Memorandum and Order, the district court noted that the owner of the SS Hong Kong Amber is from Vancouver, British Columbia. The parties agree that this is not correct and that Universal Marine, a Liberian corporation, is the owner.

to the jurisdiction of the Canadian courts and waive any defense of statute of limitations which would not have been available to it in the instant action".

The sole issue on appeal is whether the district court abused its discretion in granting the shipowner's motion to dismiss on the ground of *forum non conveniens.*

■■ The doctrine of *forum non conveniens* is based on the inherent power of the courts to decline jurisdiction in exceptional circumstances. *See* Canada Malting Co. v. Paterson Steamships, Ltd., 285 U.S. 413, 422–423, 52 S.Ct. 413, 76 L.Ed. 837 (1932). The continued vitality of the doctrine in federal courts was severely limited with the passage of 28 U.S.C. § 1404(a), which provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought". The federal courts, however, "retain the inherent power to refuse jurisdiction of cases not within § 1404(a)—cases, which should have been brought in a foreign jurisdiction, rather than in the United States". Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 645 (2 Cir. 1956), cert. den. 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); Yerostathis v. A. Luisi, Ltd., 380 F.2d 377, 379 (9 Cir. 1967).

■ The ultimate question to be decided in determining whether the doctrine of *forum non conveniens* is applicable is whether " 'the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else' ". Norwood v. Kirkpatrick, 349 U.S. 29, 31, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955) citing All States Freight v. Modarelli, 196 F.2d 1010, 1011

(3 Cir. 1952). This determination is entrusted to the sound discretion of the trial court. An appellate court may only reverse the decision of the district court if it constitutes an abuse of discretion. It is not the role of the appellate court to determine how it would have exercised its jurisdiction had the facts been presented to it. The Belgenland, 114 U.S. 355, 368, 5 S.Ct. 860, 27 L.Ed. 152 (1885); The Kanto Maru, 112 F.2d 564, 565 (9 Cir. 1940); Yerostathis v. A. Luisi, Ltd., *supra,* 380 F.2d at 379.

Various standards have been articulated to guide courts in determining whether an action should be dismissed on the ground of *forum non conveniens.* The district court relied on the following standard enunciated by the Third Circuit in Hoffman v. Goberman, 420 F.2d 423, 426–7 (1970):

> "There must be a clear showing of facts which either (1) establish such oppression and vexation of a defendant as to be out of all proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems".[3]

■ As indicated, the district court specifically found that any hardship that the defendant claimed it would suffer if the action were not dismissed was not "the kind of hardship necessary to dismiss this action". In so concluding, the court placed considerable weight on the fact that the defendant had initially requested the plaintiff to process its claim in San Francisco. The plaintiff, acting as requested, retained San Francisco counsel. The court thus held that the first of the two *Hoffman* tests, i. e. oppression and vexation of the defendant, was not applicable.[4]

---

3. Citing Koster v. Lumbermens Mutual Casualty Co., 1947, 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067.

4. Appellant contends that because the court concluded that there was not sufficient hardship shown by the defendant to dismiss the action, the motion to dismiss had to be denied.

Appellant, however, overlooks the fact that matters other than defendant's hardship may properly be considered by a court in determining whether to apply the doctrine of *forum non conveniens* in a case of this nature. *See* Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508–509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

In dismissing the action, the district court relied on the second test of *Hoffman,* i. e. that "the chosen forum was inappropriate because of considerations affecting the court's own administrative and legal problems".[5] Determining whether a forum is appropriate under the second *Hoffman* test requires a balancing of many considerations which affect the ability of the court to effectively and efficiently resolve a controversy.[6] In addition, the test requires a determination of whether a sufficient nexus exists between the controversy and the proposed forum to obligate the courts to expend the time and resources necessary to resolve the matter.[7]

The Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) listed numerous factors for consideration:

"Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained."

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

The Court in *Gulf Oil Corp.* cautioned that in considering these and other factors,[8] the plaintiff's choice of forum should "rarely be disturbed" unless the balance is "strongly in favor" of adjudicating the matter in another forum. *Id.* Although *Gulf Oil Corp.* was a non-admiralty case and did not involve foreign nationals, its reasoning has been applied in admiralty cases of this nature. *Yerostathis, supra,* 380 F.2d at 378; Transomnia v. M/S Toryu, 311 F.Supp. 751, 752 (S.D.N.Y.1970).

Numerous factors, including many of those suggested in *Gulf Oil Corp.,* were relied upon by the district court in find-

---

5. In contending that the district court applied the wrong theory of law, appellant refers to the court's statement that it "must address the question of whether it would be more convenient to try the case in Vancouver". It is true that standing alone this statement could be interpreted to mean that any balance of convenience in favor of an alternate forum is sufficient to warrant dismissal. This clearly is not the rule. Reading the court's opinion as a whole, however, we conclude that the proper standard was applied. The court found only one reason why San Francisco might serve as a forum, i. e. pre-litigation negotiations had taken place there. On the other hand, the court lists many reasons why Vancouver would be more appropriate, finding that the balance clearly favored Vancouver.

6. As stated in *Vanity Fair Mills, supra,* 234 F.2d at 645:

"Whether jurisdiction should be declined is determined by balancing conveniences, but the plaintiff's choice of forum will not be disturbed unless the balance is strongly in favor of the defendant."

7. Many of the same facts must be considered and balanced in determining whether the chosen forum is appropriate under either of the tests in *Hoffman.*

8. The Court recognized that, "Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy"; and that the "doctrine leaves much to the discretion of the court to which plaintiff resorts". *Id.* 330 U.S. at 508, 67 S.Ct. at 843.

ing that under the second test in *Hoffman* San Francisco was not an appropriate forum. Foremost among those factors was the fact that both the plaintiff and the defendant Universal Marine Corp. were foreign nationals. While the courts have been reluctant to apply the doctrine of *forum non conveniens* if its application "would force an American citizen to seek redress in a foreign court", *Vanity Fair Mills, supra*, 234 F.2d at 646; Burt v. Isthmus Development Co., 218 F.2d 353, 357 (5 Cir. 1955), cert. den. 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254 (1955), here neither party is an American citizen. The plaintiff is a Bahamian corporation and the ship owner a Liberian corporation.

In addition, no American interests are involved. The only factors in any way connecting the United States to this dispute were the initial booking of the cargo shipment in New York, the pre-litigation negotiations between plaintiff's San Francisco counsel and Orient Maritime Agencies in San Francisco, and the bill of lading issued by Orient Maritime Agencies. At best, the connection of San Francisco and the United States to this controversy must be considered minimal. *See* Sherkat Tazamoni Auto Internash v. Hellenic Lines, Limited, 277 F.Supp. 462, 463 (S.D.N.Y.1967).[9]

 All of the primary activities and contracts which form the basis of the lawsuit occurred outside of the United States, and San Francisco in particular. The cargo was loaded in Vancou-

ver; Vancouver was the port of departure of the SS Hong Kong Amber; Vancouver Weighmark Co., Ltd. acted as plaintiff's freight forwarder and another Canadian Corp., Western Overseas Shipping Ltd., served as agent for the SS Hong Kong Amber in Vancouver; the damage to the cargo occurred between Vancouver and Singapore and not in American waters; most of the witnesses and documents were in Vancouver or places outside of the United States;[10] and Canadian law was applicable. Considering all of these factors in light of the fact that San Francisco's only contact was that the pre-litigation negotiations had occurred there, we conclude that in dismissing the plaintiff's action on the ground of *forum non conveniens*, the lower court did not abuse its discretion.[11] The balance strongly favored Vancouver as the appropriate forum for the resolution of this controversy. Adjudication of the controversy in San Francisco would create burdensome administrative problems for the court and would constitute an unjustified imposition on the resources of the court.

The court granted the motion to dismiss on the express "condition that defendant consent to the jurisdiction of the Canadian courts and waive any defense of statute of limitations which would not have been available to it" had the matter been heard in San Francisco. The danger that the statute of limitations might serve to bar an action is one of the primary reasons for the limitation on the court's discretion with respect to the

9. The district court relied in part on *Hellenic Lines, Limited*. The plaintiff in that case was an Iranian corporation and defendant a Greek corporation. The court conditioned its dismissal on defendant's consent to jurisdiction in the courts of either Iran or Greece.

10. Appellant contends that the district court erred in concluding that most of the witnesses are located in Vancouver. The record does not disclose precisely what witnesses will be called or where they are located. As appellee notes, appellant's second cause of action raises the question of whether the cargo was to be stowed on-deck or under-deck. Appellant concedes that with respect to that issue the district court could properly conclude that the

witnesses would be located in Vancouver. With regard to other witnesses that might be called, there is nothing to indicate that any of them are in San Francisco. The only witness recognized by the court to be in the United States is located in Florida.

11. In reaching this conclusion we hold that the district court properly relied on the second test of *Hoffman, supra*, in dismissing on the ground of *forum non conveniens*. We agree with the district court also that the first test was not applicable. We do not mean to hold that the two tests are mutually exclusive. Private and public factors together may justify a *forum non conveniens* dismissal, as developed further in the concurring opinion.

application of the doctrine of *forum non conveniens.* As the Supreme Court, quoting from All States Freight v. Modarelli, *supra,* 196 F.2d at 1011, stated:

> " 'It [i. e. the doctrine of *forum non conveniens*] is quite naturally subject to careful limitation for it not only denies the plaintiff the generally accorded privilege of bringing an action where he chooses, but makes it possible for him to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate' ". Norwood v. Kirkpatrick, *supra,* 349 U.S. at 31, 75 S.Ct. at 546.

The court's conditional dismissal obviously resolves this problem.

Affirmed.

WALLACE, Circuit Judge (concurring in the result):

While I concur in the result reached by my brothers, I deem it important to point out where we part company. Following the same path as the district court, the majority relies on Hoffman v. Goberman, 420 F.2d 423 (3d Cir. 1970), which requires the following for a *forum non conveniens* dismissal:

> [A] clear showing of facts which either (1) establish such oppression and vexation of a defendant as to be out of all proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.

*Id.* at 426–27 (footnote omitted). Thus, the majority adopts an "either/or" test that requires *either* (1) private factors *or* (2) public factors sufficient for dismissal. I do not believe the proper test requires such compartmentalization; a combination of both private and public factors may properly lead to a *forum non conveniens* dismissal.

The language relied upon by the district court and the majority is taken from Justice Jackson's opinion for the Court in Koster v. Lumbermens Mut.

Cas. Co., 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). Although the Justice spoke in "either/or" terms, it appears to me that he was only conceptually distinguishing two kinds of factors that a court could consider in making the discretionary decision to retain or decline jurisdiction. This intent becomes clear from a comparison with Justice Jackson's opinion for the Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), decided the same day as *Koster.* Therefore, I do not believe the two categories amount to two independent tests. Although factors from either category alone may justify a *forum non conveniens* dismissal, they may also enter the balance together.

From the record it appears that applying what I deem to be the proper test would yield the same conclusion as the majority reaches and, therefore, I concur in the result.